437 A.2d 1150

**In re Application of EL RANCHO GRANDE, INC.**

**Appeal of Jack STEVENS, Daniel Galeotti, Tom Gluver, Joseph Studder, Robert Warringer and Tioga-Potter Tavern Owners Association.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 1981.

Decided Dec. 17, 1981.

498

Clifford A. Rieders, Williamsport, for appellant.

George Stenhach and Thur W. Young, Coudersport, for El Rancho Grande.

J. Leonard Langan, Asst. Atty. Gen., James J. Fitzgerald, III, Chief Counsel, Harrisburg, for Liquor Control Bd.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This is an appeal from an order of the Commonwealth Court affirming an order of the Court of Common Pleas of Potter County which quashed, for lack of standing, an appeal from a determination by the Pennsylvania Liquor Control Board ("Board") to grant a liquor license in excess of the prescribed quota for Portage Township. See Act of April 12, 1951, P.L. 90, art. IV, § 461, 47 P.S. § 4–461(a), as amended. We vacate the order of the Commonwealth Court and remand to that court for consideration of the merits of appellants' claim.

Appellants are several individuals who hold liquor licenses in Potter County and the Tioga-Potter Tavern Owners Association ("Association"). The individual appellants participated in a hearing conducted by the Board on the application of El Rancho Grande, Inc. ("Applicant"), which had requested a liquor license for a proposed restaurant in the Township. Over the protests of the individual appellants, the Board approved the application, having determined that Portage Township was a "resort area," see 47 P.S. § 4–461(b), and that facilities provided by the existing license holders were inadequate to meet the needs of the resident and transient population of the area, see *Willowbrook Country Club, Inc. Liquor License Case*, 409 Pa. 370, 187 A.2d 154 (1962). Claiming that the township was not within a "resort area," that Potter County was already adequately served, and that their businesses would be harmed by the granting of a license in excess of the statutory quota, the individual appellants appealed the Board's ruling to the court of common pleas. Appellant Association sought leave to intervene as an additional appellant, and the court permitted the Association to intervene for the limited purpose of arguing the standing of both itself and the individual appellants. After a hearing at which arguments were presented by

counsel for all parties, the trial court denied standing to all appellants, stating that it did so "reluctantly." A divided panel of the Commonwealth Court affirmed. *In re: Application of El Rancho Grande, Inc.*, 51 Pa.Cmwlth. 410, 414 A.2d 751 (1980) (Blatt, J., dissenting). We granted allowance of appeal.

Section 464 of the Liquor Code, 47 P.S. § 4–464, sets forth specific classes of persons and institutions who may appeal from the Board's determination to grant or refuse a license:

"Any applicant who has appeared before the board or any agent thereof at any hearing, as above provided, who is aggrieved by the refusal of the board to issue any such license or to renew or transfer any such license may appeal, or any church, hospital, charitable institution, school or public playground located within three hundred feet of the premises applied for, aggrieved by the action of the board in granting the issuance of any such license or the transfer of any such license, may take an appeal limited to the question of such grievance, within twenty days from date of refusal or grant, to the court of quarter sessions of the county in which the premises applied for is located or the county court of Allegheny County. Such appeal shall be upon petition of the aggrieved party, who shall serve a copy thereof upon the board, whereupon a hearing shall be held upon the petition by the court upon ten days' notice to the board, which shall be represented in the proceeding by the Department of Justice. The said appeal shall act as a supersedeas unless upon sufficient cause shown the court shall determine otherwise. The court shall hear the application de novo on questions of fact, administrative discretion and such other matters as are involved, at such time as it shall fix, of which notice shall be given to the board."

Additionally, inhabitants of the neighborhood within five hundred feet of an establishment which has successfully sought a license have been granted standing to appeal on the

basis of section 404 of the Code. That section sets forth the circumstances in which the Board may grant an application for a hotel, restaurant, or club liquor license, with the following relevant provisos:

"Provided, however, That in the case of any new license or the transfer of any license to a new location the board may, in its discretion, grant or refuse such new license or transfer if such place proposed to be licensed is within three hundred feet of any church, hospital, charitable institution, school, or public playground, or if such new license or transfer is applied for a place which is within two hundred feet of any other premises which is licensed by the board, or if such new license or transfer is applied for a place where the principal business is the sale of liquid fuels and oil: And provided further, That the board shall refuse any application for a new license or the transfer of any license to a new location if, in the board's opinion, such new license or transfer would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of five hundred feet of the place proposed to be licensed."

47 P.S. § 4–404. See *Gismondi Liquor License Case*, 199 Pa.Super. 619, 186 A.2d 448 (1962).[1]

Appellants concede that they come within none of these provisions of the Code, but contend that they have standing to appeal the Board's determination by virtue of section 702 of the Administrative Agency Law, which states:

"Any person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursu-

[1]. In *Gismondi* the Superior Court held that, despite the failure of section 464 to mention nearby residents as among those specifically authorized to take an appeal, the language of section 404 compelled the conclusion that, if these residents appeared before the Board to protest a proposed transfer or granting of a license, they became "parties aggrieved by an adverse decision of the Board or of the lower court." Id., 199 Pa.Super. at 624, 186 A.2d at 451.

ant to Title 42 (relating to judiciary and judicial procedure)."

2 Pa.C.S. § 702.[2]

Despite this broad legislative grant of permission to appeal from a determination of a Commonwealth agency, the majority of the Commonwealth Court panel held that because appellants did not fall within any of the classifications of interested parties set forth in sections 404 and 464 of the Liquor Code, they had no "direct interest in the adjudication of the Board" and thus lacked standing to appeal. Such a conclusion renders section 702 of the Administrative Agency Law superfluous by limiting its application to those parties who are already statutorily permitted to appeal. Moreover, it ignores section 701 of that Law, which states:

"(a) General rule.—Except as provided in subsection (b), this subchapter shall apply to all Commonwealth agencies regardless of the fact that a statute expressly provides that there shall be no appeal from an adjudication of an agency, or that the adjudication of an agency shall be final or conclusive, or shall not be subject to review.

(b) Exceptions.—None of the provisions of this subchapter shall apply to:

(1) Any matter which is exempt from Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies).

(2) Any appeal from a Commonwealth agency which may be taken initially to the courts of common pleas under 42 Pa.C.S. § 933 (relating to appeals from government agencies)."

**2.** See 42 Pa.C.S. § 763(a) (appeals from government agencies under § 702 vested in Commonwealth Court). Section 702 implements, as to Commonwealth agencies, Article V, section 9 of the Pennsylvania Constitution, which provides:

"There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law."

See *Bronson v. Commonwealth Board of Probation and Parole*, 491 Pa. 549, 421 A.2d 1021 (1980).

2 Pa.C.S. § 701.   If section 702 applies to all Commonwealth agencies even when a statute provides that "there shall be *no* appeal," then *a fortiori* it applies when a statute grants an automatic right of appeal to certain limited classes of interested parties.

Therefore, pursuant to section 702, we must inquire whether, under traditional concepts of standing, appellants have been "aggrieved" by the Board's action in granting a license to Applicant and whether they have a "direct interest" in the Board's adjudication.

Our cases dealing with standing have been summarized in *Wm. Penn Parking Garage v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975):

> "The core concept, of course, is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution of his challenge.   In particular, it is not sufficient for the person claiming to be 'aggrieved' to assert the common interest of all citizens in procuring obedience to the law."

464 Pa. at 192, 346 A.2d at 280–81 (plurality opinion).   Accord, e.g., *Independent State Store Union v. Pennsylvania Liquor Control Board*, 495 Pa. 145, 432 A.2d 1375 (1981). Moreover, "the relationship between the challenged action and the asserted injury must be direct and immediate, not a remote consequence."   *Independent State Store Union*, supra, 495 Pa. at 154, 432 A.2d at 1380.

Certainly the individual appellants here have asserted an interest beyond the common interest of all citizens.   They allege that they are the closest licensees to Applicant's proposed establishment, and that certain of them are located at distances of one to three miles from the new licensee. The record contains testimony sufficient to support a finding that one or more of the individual appellants would be driven out of business by the presence of an additional licensee.   Thus, the alleged injury is clearly both substantial and particular to appellants.   See *Wm. Penn Parking Ga-*

*rage v. City of Pittsburgh*, supra, 464 Pa. at 192–97, 346 A.2d at 280–83.

Nonetheless, Applicant argues that appellants do not have the type of direct and immediate interest in the Board's action necessary to confer standing under our cases. Applicant contends that since the Liquor Code, 47 P.S. § 1–101 et seq., was not intended to protect existing license holders from competition, the causal connection between the Board's action and appellants' asserted injury is too remote. In support, Applicant cites language in *Wm. Penn* which states that "standing will be more readily found where protection of the type of interest asserted is among the policies underlying the legal rule relied upon by the person claiming to be 'aggrieved.'" 464 Pa. at 198, 346 A.2d at 284.[3] Applicant reads this statement to mean that if the interest asserted by a person challenging governmental action is *not* protected by the "policies underlying the legal rule," the interest is not immediate and thus standing does not exist. Such an interpretation seeks to transform into a restrictive test what was intended as a guideline to an expanded concept of standing to challenge administrative action. As this Court recently observed,

> "[i]n *Wm. Penn*, supra, 464 Pa. at 197, 346 A.2d at 283, the requirement that the interest be immediate was explained as involving a concern with 'the nature of the causal connection between the action complained of and the injury to the person challenging it.' Necessarily any examination of this requirement was said to be a question of degree for which only guidelines could be established. One of the two guidelines discussed was whether the type of interest asserted was among the policies or interests protected by the legal or constitutional rule relied on by the person claiming standing. Stated another way, i.e., in

**3.** Applicant also relies upon *Ritter Finance Co. v. Myers*, 401 Pa. 467, 165 A.2d 246 (1960), which involved a challenge to the granting of a loan company application under the Small Loans Act, 7 P.S. § 751 et seq. That case, however, was decided before the enactment of the present Administrative Agency Law; review there was sought under common law certiorari.

terms of federal cases, . . . this guideline determines whether 'the interest [the taxpayer] seeks to protect is "arguably within the zone of interests sought to be protected or regulated by the statute or constitutional guarantee in question." ' *Wm. Penn*, supra, 464 Pa. at 198 n.23, 346 A.2d at 284 n.23 [quoting *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970).]"

*Application of Biester*, 487 Pa. 438, 444 n.6, 409 A.2d 848, 851–52 n.6 (1979) (citation omitted).[4]

In *Association of Data Processing Service Organizations v. Camp*, supra, plaintiffs in the business of providing data services brought an action under section 702 of the Administrative Procedure Act, 5 U.S.C. § 702, seeking to challenge a ruling by the Comptroller of the Currency permitting national banks to furnish data services to their customers. The court of appeals denied plaintiffs standing on the ground that no "legal interest" of the plaintiffs had been invaded. Stating that the "legal interest" test is more properly concerned with the merits, the Supreme Court reversed, finding that plaintiffs' competitive interests were "arguably within the zone of interests protected or regulated" by section 4 of the Bank Service Corporation Act, 12 U.S.C. § 1864, which provides: "No bank service corporation may engage in any activity other than the performance of bank services for banks." Observing that "[t]here is no presumption against judicial review and in favor of administrative absolutism," the Court held that the "generous review provisions" of the Administrative Procedure Act entitled the plaintiffs to standing to challenge the ruling of the Comptroller. 397 U.S. at 153–57, 90 S.Ct. at 830–31. See *Arnold Tours v. Camp*, 400 U.S. 45, 91 S.Ct. 158, 27 L.Ed.2d 179 (1970) (for same reason, travel agents accorded standing to challenge ruling permitting banks to furnish travel services).

**4.** *Application of Biester* concerned a question of taxpayer standing, and thus the bracketed word "taxpayer" was inserted in the language quoted from *Data Processing*; the Supreme Court had used the broader term "complainant."

506

With these considerations in mind, we turn to appellants' claim to a direct interest in the Board's determination under the similarly broad review provisions of Pennsylvania's Administrative Agency Law, 2 Pa.C.S. § 701 et seq. An introductory section of the Liquor Code states:

"This power shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth and to prohibit forever the open saloon, and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose."

47 P.S. § 1–104(a). The purpose of regulatory legislation in this area has always been to restrain the sale of liquor, not to promote it. See, e.g., *Bierman Liquor License Case*, 188 Pa.Super. 200, 145 A.2d 867 (1958); *Application of Bethel Township Veterans Home Ass'n*, 180 Pa.Super. 159, 119 A.2d 613 (1956). To that end, the Legislature has imposed a quota limiting the number of retail licenses to be issued in each municipality in the Commonwealth, 47 P.S. § 4–461. By limiting according to population the number of licensees which may operate in a municipality, the Liquor Code necessarily regulates the level of competition which exists among licensees, whether or not such regulation is a stated purpose of the Code.

Because in certain municipalities population levels may increase substantially with a seasonal influx of visitors, the Legislature has granted to the Liquor Control Board the power to increase the number of licenses above the statutory quota "in any such municipality which in the opinion of the board is located within a resort area." 47 P.S. § 4–461(b). The Legislature did not define the term "resort area" but instead has left the definition to judicial interpretation. Construing the relevant legislative history, our courts have determined that the "resort area" exception was intended "to render an equitable distribution of such licenses in areas where, during certain seasons, the population is increased to such an extent that the usual number of licenses *is not adequate to serve the needs of the people." Willowbrook*

*Country Club, Inc. Liquor License Case,* supra, 409 Pa. at 373, 187 A.2d at 155, citing *Bierman Liquor License Case,* supra (emphasis in original). Thus it is clear that the Legislature did not intend the Board to have unlimited discretion in awarding licenses in excess of the prescribed quota; rather, in keeping with its purpose to restrain the sale of liquor, the Legislature intended that the Board award an additional license only in an area which undergoes a seasonal increase in population and only when the applicant has demonstrated that the area has an "actual need" for an additional license. *Willowbrook Country Club, Inc. Liquor License Case,* supra.

Here, it is undisputed that the quota for the municipality in which Applicant seeks a liquor license is full, and that, but for the Board's determination that Portage Township is within a resort area and needs an additional license, Applicant's request for a license would have been denied. The record reveals that the site of Applicant's proposed establishment is an open field in a sparsely populated area, with only one farmhouse and a seasonal "camp" located nearby. Under Applicant's theory of the exclusivity of the Liquor Code provisions relating to appeals, no one in Portage Township but the owners of the farmhouse and the "camp" would have standing to challenge the Board's determination that Portage Township needed another liquor licensee. In fact, under this theory, were it not for the chance location of the farmhouse and "camp" within five hundred feet of the proposed establishment, no one at all would have standing to challenge the Board's granting of the additional license or, indeed, as many additional licenses as there are open areas in Portage Township.

█ We cannot believe that the Legislature intended to permit every disappointed applicant to appeal from the denial of a license and at the same time to permit no judicial review of the granting of a license in certain cases solely on the basis of geographic fortuity. To the contrary, the plain language of section 702 of the Administrative Agency Law makes it unmistakably clear that the Legislature intended to

subject the actions of its agencies to increased judicial review, not to insulate them from it.

▉ Nor does the fact that the individual appellants are themselves engaged in the business of selling liquor disqualify them from representing the public interests which the Liquor Code was intended to serve. The regulatory scheme at issue in *Data Processing* was designed to protect the public from the possibility of bank failure by restraining national banks from excessive diversification. Noting that "[w]here statutes are concerned, the trend is toward enlargement of the class of people who may protest administrative action," the Court stated: "Certainly he who is 'likely to be financially injured' . . . may be a reliable private attorney general to litigate the issues of the public interest in the present case. 397 U.S. at 154, 90 S.Ct. at 830, citing *FCC v. Sanders Bros. Radio Station*, 309 U.S. 470, 477, 60 S.Ct. 693, 698, 84 L.Ed. 869 (1940) (although economic injury to existing station not an independent element to be considered in FCC decision to grant new license, existing station claiming economic injury has standing to bring errors of law to attention of appellate court). Accord, *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942).

▉ So, too, in cases where the Liquor Control Board has decided to grant a license in excess of the statutory quota, competitors like the individual appellants who claim to have been financially injured may be the only persons willing to expend the time and funds to pursue an appeal. Although they may not obtain a remedy at law solely on the basis of their economic injury, the injury is nonetheless so inextricably intertwined with the fundamental goals which the Liquor Code seeks to achieve as to make the individual appellants vigorous and reliable representatives of the public interest. Therefore, in keeping both with the concepts of standing enunciated by this Court and with the legislative intent to provide increased judicial review of the actions of its agencies, we conclude that the individual appellants have standing to appeal the Board's determination to grant Applicant a "resort area" license in excess of the statutory quota.

■ As to the standing of appellant Tioga-Potter Tavern Owners Association, the Association's position appears to be more that of an amicus curiae than that of an injured party. The Association did not appear before the Board to contest Applicant's request for a license. It did not advance any issues before the court of common pleas that uniquely affected the Association. Rather, it merely sought to advance the issues that had already been advanced by the individual appellants. Thus, the Association lacks standing. It is, however, free to participate as an amicus curiae on remand, pursuant to Pa.R.App.P. 531.

Accordingly, the order of the Commonwealth Court is vacated and the case remanded to that court for consideration of the merits.

WILKINSON, J., did not participate in the consideration or decision of this case.