# Prizm Asset Management Company v. Moosic Borough Planning Commission

C.P. of Lackawanna County, no. 2005 CIV 3513.

*John G. Dean,* for petitioners.
*Christopher Powell,* for respondent Moosic Borough Planning Commission.
*John J. Brazil,* for intervenor Moosic Borough.
*David K. Brown,* for intervenor Dickinson.
*William P. Jones,* for intervenor Hemingway.

MAZZONI, *J.,* February 3, 2006—

## I. INTRODUCTION

What is before this court is a petition for "Permission to appeal nunc pro tunc" filed on September 1, 2005 by petitioners Prizm Asset Management Company, Preit Services Ltd. and Diann Van Louvender. This petition seeks review of respondent Moosic Borough Planning Commission's conditional approval of a land use application submitted by Hemingway Development Limited

Partnership.[1] The application submitted to the Planning Commission sought approval for the development of a retail store complex referred to as "The Shoppes at Montage."

Hemingway and Dickinson Development Partnership, both of whom claim ownership interests in whole or in part in the subject land, filed notices of intervention on September 30, 2005. The Borough of Moosic, who claims that the Planning Commission is a body of the Borough, also filed a notice of intervention of September 30, 2005.

The respondent Moosic Borough Planning Commission and the intervenors filed timely answers and new matter to the subject petition. Furthermore, the Planning Commission and the intervenors filed, on October 24, 2005, a "joint motion to quash land use appeal." The petition for permission to appeal and the motion to quash were heard on November 3, 2005. The parties elected to argue their respective positions relying upon their briefs, exhibits in support thereof, and the certified record. Accordingly, the arguments advanced by all parties will be addressed in this memorandum and order.[2]

---

1. Hemingway claims that the subject application was submitted by Hemingway in its capacity as a general partner of Dickinson Development Partnership. (See para. 5 of Hemingway's answer to petition.) Dickinson claims to be a general partnership and Hemingway is claimed to be a general partner of Dickinson. (See paras. 24 and 25 of Hemingway's answer and new matter to petition.)

2. In addition to the parties' submissions and attached exhibits, the parties agreed to submit and did submit to the court the discovery deposition of Moosic Borough Zoning Officer James P. Durkin, said deposition dated September 3, 2005. This deposition was taken by counsel for the objectors in the Pennsylvania Environmental Hearing Board adjudication.

## II. PROCEDURAL HISTORY/FACTUAL ALLEGATIONS

In their petition, the petitioners/objectors (Prizm, Preit and Van Louvender) claim that on June 15, 2005, the Moosic Borough Planning Commission granted conditional approval to Hemingway for a retail development, commonly referred to as "The Shoppes at Montage." The development is intended to be constructed on the Montage Mountain area, within the Borough of Moosic, Lackawanna County, Pennsylvania. The petitioners claim that the land development plan submitted by Hemingway wrongfully represents that the entire project is contained within the permissible "Plan Development Zone" (PDZ). The petitioners claim that Hemingway's submission is in error and that approximately 60 percent of this proposed project is within Moosic Borough's Conservation Zone (C-N zone), a zone which does not permit construction of the proposed project. (See paras. 5-9 of petition.)

The petition further states that the petitioners first learned of the aforementioned irregularity or error "in connection with an August 11, 2005 hearing before the Pennsylvania Department of Environmental Protection . . . ." (See para. 14 of petition.) Although the petition is silent as to the exact date, an affidavit of James W. Walsh, vice-president of Prizm, states that Prizm learned of the error on August 3, 2005. (See exhibit 2 attached to petitioner's brief in opposition to motion to quash.) Petitioners further claim that they retained Mr. Terrance J. Ostrowski P.E. of the engineering firm of Borton-Lawson, who confirmed that 59 percent of the project site is in the C-N zone. (See

affidavit of Ostrowski, attached as exhibit 1 to petitioner's brief in opposition to motion to quash.)

Acknowledging that the requested appeal was untimely filed, petitioners claim that they are entitled to relief because an administrative official, as well as the Planning Commission, committed fraud by acting ignorantly, negligently, or wrongfully "in failing to identify the apparent inaccuracies and misrepresentations in Hemingway's plan . . . ." (See paras. 15, 16, 17 of petition.)

The respondents/intervenors, in their answer and new matter, deny all of the above allegations contained in the subject petition. More specifically, the respondents/intervenors claim that the Planning Commission issued its approval on February 23, 2005. Furthermore, they maintain that the subject project is entirely within the PDZ zone and the application filed in connection with the subject approval is accurate. (See paras. 5-9 of answer and new matter.) In addition to same, and under the heading of new matter, the respondents/intervenors raise issues of timeliness of appeal as well as standing both of which are more comprehensively addressed in the motion to quash.

The respondents/intervenors filed a joint motion to quash. Among the claims raised therein, the motion states that the petitioners' requested relief should be denied because the appeal is untimely and there exists no extraordinary circumstances to permit the granting of an appeal nunc pro tunc. Furthermore, the respondents/intervenors also claim that the petitioners are not aggrieved parties and accordingly, lack the necessary standing. On the issue of standing, the petitioners, in their brief in opposition, assert that they do have the requested standing. Prizm, who manages The Steamtown Mall located

in the City of Scranton, asserts that Prizm and The Steamtown Mall will "suffer substantial economic damages" through the anticipated loss of its tenants base. (See exhibit 2 to petitioner's brief in opposition.) Likewise, Preit, which has some association with the Wyoming Valley Mall located in Wilkes-Barre Township, Luzerne County, Pennsylvania and The Viewmont Mall located in Dickson City, Lackawanna County, Pennsylvania, also claims a similar economic hardship if the development is permitted to proceed. (See exhibit 7 to petitioner's brief in opposition.)

Petitioner Van Louvender also submitted an affidavit in which she asserts that she is a "taxpayer, homeowner, and resident of the Borough of Moosic." In addition thereto, she claims that her standing is further supported by her desire to "preserve the natural, scenic, recreational, and aesthetic values of the land sought to be developed for 'The Shoppes at Montage'." (See Van Louvender affidavit attached as exhibit 6 to petitioner's brief in opposition.)

### III. ISSUES

Whether the petitioners are entitled to appeal the Borough of Moosic Planning Commission's decision?

### IV. STANDARD/SCOPE OF REVIEW

The scope of judicial review in a land use appeal where the trial court has not taken any additional evidence is limited to a determination of whether the zoning hearing board and/or the planning commission committed an error of law or abused its discretion. *Stassi v. Ransom Township Zoning Hearing Board,* 54 D.&C.4th 303 (Lacka. Cty., 2001); *Phillips v. Zoning Hearing Board of Montour*

*Township,* 776 A.2d 341, 342 n.2 (Pa. Commw. 2001); *World School House Residences Limited Partnership v. Zoning Hearing Board of the City of Scranton,* 102 Lacka. Jur. 14, 18 (2000), *aff'd,* 777 A.2d 544 (Pa. Commw. 2001). A governing body abuses its discretion if its findings are not supported by substantial evidence. *Ruf v. Buckingham Township,* 765 A.2d 1166, 1168 n.2 (Pa. Commw. 2001); *City of Scranton v. Zoning Hearing Board of City of Scranton,* 101 Lacka. Jur. 159, 161 (1999), *aff'd,* 767 A.2d 33 (Pa. Commw. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cardamone v. Whitpain Township Zoning Hearing Board,* 771 A.2d 103, 104 (Pa. Commw. 2001); *Glynn v. Zoning Hearing Board of Dickson City,* 101 Lacka. Jur. 145, 151 (1999). Furthermore, when a zoning appeal presents a question of law, the scope of appellate review is plenary. *Cranberry Park Associates v. Cranberry Township Zoning Hearing Board,* 561 Pa. 456, 751 A.2d 165, 166 n.4 (2000).

An appeal taken out of time (nunc pro tunc) is permitted when the party seeking relief demonstrates that the delay was caused by extraordinary circumstances involving fraud, its equivalent, or a breakdown in the court's operation due to the default of its officers. *Dickson Estate,* 443 Pa. 303, 279 A.2d 39 (1971).

## V. DISCUSSION

### A. *Timeliness of Appeal*

The appeal in the instant action is appropriately characterized as a "land use appeal" and is accordingly guided

by the Pennsylvania Municipalities Planning Code, 53 P.S. §10101 et seq. All appeals from land use decisions "shall be taken to the court of common pleas . . . within 30 days within entry of the decision . . . ." 53 P.S. §11002-A.

Generally speaking, the court has no power to extend the period for taking appeals except in very limited circumstances. An appeal taken out of time (nunc pro tunc) is permitted, however, when the party seeking relief demonstrates that the delay was caused by extraordinary circumstances involving fraud, its equivalent, or some breakdown in the court's operation due to the default of its officers. *Dixon Estate,* 443 Pa. 303, 279 A.2d 39 (1971); *West Penn Power Company v. Goddard,* 460 Pa. 551, 333 A.2d 909 (1975); *Weiman by Trahey v. City of Philadlephia,* 129 Pa. Commw. 25, 564 A.2d 557 (1989), *app. after remand,* 163 Pa. Commw. 672, 641 A.2d 730 (1994). The equivalent of fraud essentially means "the ignorant, negligent, or wrongful acts of a court or [an] administrative official which misled an aggrieved party to his detriment." *In re Appeal of Girolamo,* 49 Pa. Commw. 159, 164, 410 A.2d 940 (1980).

From a reading of the parties' submissions, there appears to be a conflict as to when the Planning Commission issued its conditional approval. Petitioners maintain that the conditional approval was given on June 15, 2005. As support for their position, the petitioners rely upon a letter dated June 15, 2005 from the Moosic Borough Planning Commission Secretary Joseph Dente to a Mr. Anderson, Director of Development. (See exhibit A attached to petition.) Conversely, the respondents/intervenors claim that the Planning Commission's approval

was granted on February 23, 2005. The exhibits and certified record submitted however, tend to favor the respondents/intervenors' assessment.

Irrespective of which date one ascribes to the grant of approval, there is no question that petitioners' appeal was filed out of time.

The petitioners' claim that the fraud, or otherwise wrongful conduct, involved the Planning Commission's approval of a development plan which was allegedly riddled with "misrepresentations and inaccuracies." (See para. 6 of petition.) More specifically, petitioners assert that the plan, as submitted, wrongfully represents that the entire project is in the Moosic Borough Plan Development Zone (PDZ), a zone that would allow retail use under the appropriate zoning ordinances. Petitioners claim that 60 percent of the proposed site lies within the Moosic Borough's Conservation Zone (C-N zone) which does not permit such development.

Although the petition is silent as to the exact date that the petitioners became aware of the alleged error, the petition does state that it was discovered in preparation for or in connection with an August 11, 2005 hearing before the Pennsylvania Department of Environmental Protection. (See para. 14 of petition.) One James M. Walsh (vice-president of Prizm), in his affidavit dated October 28, 2005, stated that on August 3, 2005, he became aware that this project or parts thereof may be in a C-N zone. (See para. 11 of Walsh affidavit attached as exhibit 2 to petitioner's brief in opposition.) One Richard Ziegler (development director for Preit Services), in his affidavit dated November 1, 2005, stated sometime after August 3, 2005, Preit learned of the alleged error.

(See para. 4 of Ziegler affidavit attached as exhibit 3 to petitioner's brief in opposition.)

A Mr. Terrance J. Ostrowski, a registered professional engineer for the engineering firm of Borton-Lawson, was retained by Prizm and Preit and submitted an affidavit dated October 31, 2005. (See exhibit 1 attached to petitioner's brief in opposition.) In his affidavit, Ostrowski states that in preparation for the August 11, 2005 DEP hearing, he acquired the Moosic Borough's zoning map and the developer's map to determine if the zoning lines were correct. He made the necessary adjustments as to scales and scanned the map into a special software package. Upon conclusion of the process, he concluded that 59 percent of "The Shoppes at Montage" site lies within the C-N zone, and accordingly, the developers' plans were in error.[3]

The petitioners principally rely upon the cases of *Grand Central Sanitary Landfill Inc. v. Zoning Hearing Board of Plainfield Township,* 155 Pa. Commw. 273, 625 A.2d 115 (1993) and *In re Appeal of Girolamo,* 49 Pa.

---

3. It is important to note that the same petitioners raised the same "zoning claim" at a hearing before the Pennsylvania Environmental Hearing Board in early October 2005 regarding a request for supersedeas relating to DEP's grant of a NPDES permit. In an opinion and order dated October 24, 2005, the Environmental Hearing Board dismissed the petitioner's zoning claim. Acknowledging that the zoning lines are difficult to pinpoint with accuracy, the board found Mr. Ostrowski's methodology "skeptical." Furthermore, the board found Moosic Borough's Zoning Officer's testimony to be credible and further found that his testimony supports the conclusion that "the entire project site is within the Plan Development Zone." (See pages 9, 10 of Hearing Board's opinion attached to respondents'/intervenors' brief in support of motion.)

Commw. 159, 410 A.2d 940 (1980). In *Grand Central* (an appeal from a zoning hearing board decision), adjacent property owners complained to the township zoning officer that the landfill was conducting its operation in violation of the 500-foot setback provision in the township zoning ordinances. The zoning officer concluded that Grand Central was in fact operating outside of the 500-foot setback but also determined that the landfill operation was a pre-existing, nonconforming use. The objectors appealed this decision to the zoning hearing board which affirmed the zoning officer's decision. A timely appeal was not taken.

Sometime later, the objectors discovered that the testimony of a Grand Central representative was false and accordingly, the objectors filed a motion for reconsideration with the zoning hearing board. Upon reconsideration, the board concluded that there were misrepresentations advanced and accordingly, there were mistakes of fact made by the board regarding the landfill's pre-existing, nonconforming use. The board reversed its decision and concluded that the adjacent tract was not a pre-existing, nonconforming use and was subject to the 500-foot setback. From this decision, Grand Central took a timely appeal to the court of common pleas. The lower court found that the board had no jurisdiction over the reconsideration after it rendered its final order because it does not have the power to reconsider its decisions. The objectors appealed the trial court's decision.

Upon review, the Commonwealth Court concluded that the MPC did not confer the power of reconsideration upon zoning hearing boards. Relying upon *Appeal of Girolamo, supra,* and in affirming the lower court's opin-

ion, the Commonwealth Court held that the objectors should have filed a petition nunc pro tunc. The court further noted:

"In that petition they could have alleged fraud, a legitimate basis for . . . nunc pro tunc petition, . . . and if the court found such allegations to be true it could have vacated the board's decision and then taken testimony on the merits or remanded the case for the board to do so." *Grand Central, supra* at 279, 625 A.2d at 119.

In *Appeal of Girolamo, supra,* the municipality granted a permit to allow an expansion of a nonconforming use. The landowner who owned a grocery store applied for a permit to expand his current use. The notices sent to interested parties stated that the applicant intended to convert the premises into additional grocery store space. No objections were lodged and the permit was granted. Renovations were made and, contrary to the application, the applicant opened a restaurant on the premises. Almost three months after the permit was granted, the owner of an adjacent property filed an appeal with the court of common pleas. The landowner/applicant moved to quash the appeal as being untimely. The trial court denied the motion to quash and reversed the board and revoked the permit.

On appeal, the Commonwealth Court affirmed the lower court's decision. The Commonwealth Court found that the applicant had set forth in his application misleading information that was "tantamount to fraud." Because the adjacent landowner was not aware of the ultimate use until sometime after the renovations were made, the trial court had the power to extend the 30-day period. The trial court extended the 30-day period starting

from the time the objector discovered the impermissible use.

It is interesting to note that in *Girolamo,* the appellate court took issue with the trial court's liberal extension of time. The Commonwealth Court found it somewhat incredible that the objector discovered the impermissible use at the time that the restaurant opened and not before. Not willing to disturb the lower court's finding, the Commonwealth Court held that "even where fraud is present, a late appeal must be filed within a reasonable time after the fraud is discovered." *Appeal of Girolamo, supra* at 166, 410 A.2d at 944.

The cases cited by the petitioners and referenced herein bear little resemblance to the case at bar. In *Grand Central, supra,* it was readily apparent and undisputed that the parcel in question was not a pre-existing, nonconforming use. The complainant merely searched "land use filings and DER records" which reflected that the use was not as represented. *Grand Central, supra* at 276, 625 A.2d at 117. In *Appeal of Girolamo,* it was apparent that once the restaurant opened, the landowner's use conflicted with the application and the notices that were forwarded to interested parties. Accordingly, in *Grand Central, supra* and *Appeal of Girolamo, supra,* there were blatant and undisputable misrepresentations which triggered petitioners' untimely appeal.

In the case at bar, and except for conclusionary allegations in the petition, there is little to support a claim for fraud on the part of the developer and/or the administrative officials of the Borough of Moosic. This court recognizes that Moosic Borough's zoning map does not specifically reference definitive surveyed lines defining

the precise dimensions of the respective zones. Nonetheless, it is apparent that Mr. Durkin diligently referenced not only all of the available maps including pre-existing approved subdivision submissions, he also relied upon his knowledge of the area and the accompanying geographic topography.[4]

In his deposition and in response to questions inquiring about the basis of his conclusion, Mr. Durkin testified as follows:

"So I, myself, and the secretary of the planning commission, Borough of Moosic, arrived at the same decision that we had earlier, that it was well within the PDZ zone by familiarity with the area, the topography and the fact that we had both been there many times, being that the PDZ zone was way up over the hill and the conservation zone was at the bottom. I was satisfied, as I had been before, that it was, in its entirety, in the PDZ zone and a distance from the CN." (See Durkin depo. pp. 38-39.)

Principally, the petitioners rely upon Mr. Terrance J. Ostrowski's affidavit as support for the existence of fraud and/or misrepresentation. There is no evidence to support that Mr. Ostrowski is more familiar with the zoned areas in question than Mr. Durkin. Secondly, Mr. Ostrowski relied almost exclusively upon a software package whose accuracy and reliability in the profession is simply not addressed in any of the submissions.

---

4. The Zoning Officer, in part, also relied upon his knowledge and review of previous approved minor subdivision plans of Hemingway Development dated 8/31/2004 and revised 9/2/2004. (See Durkin depo. pp. 40-43.)

Without supporting data on the "overlay process" used, this court is not willing to rely upon this software package to substantiate a claim of fraud or misrepresentation on the part of the administrative borough officials or the developer. It is apparent to this court that the Planning Commission and the Zoning Officer performed their due diligence to otherwise conclude that the project is within the appropriate zone.

Lastly, this court is compelled to address the timeliness of this appeal as it relates to the date of the Planning Commission's decision. The minutes of the Borough of Moosic Planning Commission's meeting of February 23, 2005 reflect that the Planning Commission unanimously granted "preliminary and final approval for the proposed 'The Shoppes at Montage'" with attending conditions. Furthermore, the minutes reflect that counsel for petitioners (Attorney John Dean) was present and "spoke about the negative economic impact the project would have on existing retailers in the area." (See exhibit 19 to certified record.)

Despite the aforementioned historical background, the petitioners claim that the Planning Commission granted approval on June 15, 2005. Petitioners' assertion is predicated on a Planning Commission letter dated June 15, 2005, authored by Joseph Dente, Secretary, directed to Mr. J.R. Anderson, Director of Development. (See exhibit A attached to petition.) A review of this letter simply corroborates the aforementioned history. This letter, in pertinent part, states as follows:

"At the meeting of the Moosic Borough Planning Commission held on February 23, 2005 preliminary/final approval of the land development plan was unani-

mously granted for The Shoppes at Montage located on Glenmaura National Boulevard based on the following conditions . . . ."

As indicated herein, the time period within which an objector has to appeal a planning commission's decision is guided by section 1002-A of the MPC. The intent of section 1002-A, as interpreted by appellate courts, was "to begin that period when the municipality's decision process has been finalized with sufficient clarity that any party aggrieved by the decision can evaluate whether or not to appeal." *Peterson v. Amity Township Board of Supervisors,* 804 A.2d 723, 728 (Pa. Commw. 2002). In *Peterson,* the Commonwealth Court held that "an oral approval by the board meets the standard" and further noted,

"Moreover, causing the appeal time to be triggered by expiration of the time for delivery of a written decision is problematic. First, a written decision is served on the applicant, not the objecting neighbor. . . . In addition, an applicant may extend the time within which the board must reduce its oral approval to writing, or waive the requirement altogether. In this circumstance, an aggrieved objector would be left to guess when his appeal time has begun to run or, worse, the time might never begin to run at all. Accordingly, we hold that the formal vote of the municipality to approve a subdivision plan begins the 30-day period within which an aggrieved objector must appeal, at least to the extent the objector has actual or constructive notice of the decision." *Id.* at 728.

Accordingly, in the case at bar, the appeal period began to run on the night of the Planning Commission's

oral approval, to wit, February 23, 2005 and the petitioners/objectors, through counsel, had timely notice of same.

The petitioners, in this case, through counsel, were aware of the Planning Commission's decision on February 23, 2005. By the petitioner's own admission, it was not until August 3, 2005, in preparation for an EHB hearing, that their suspicions were aroused. Neither the respondent nor the intervenors attempted to conceal any of their actions. *The same methodology and documents used by Mr. Ostrowski in August 2005 were available to the petitioners in February and March 2005.* (emphasis added) To grant an untimely appeal in this case would unjustly provide precedential authority to other untimely filed objections requesting relief predicated upon conclusionary claims of fraud and/or misrepresentation. This court is not willing to circumvent the clear language of the MPC and accompanying appellate authority. With the exception of extraordinary circumstances, municipal bodies, applicants, and objectors are entitled to rely upon the black letter of the MPC, the clear language of the MPC and the court's corresponding enforcement of same. To do otherwise would simply dilute the MPC to a meaningless compilation of regulations and/or recommendations.

Accordingly, and assuming there does exist viable allegations of fraud which this court rejects, this court concludes that the petitioners simply failed to file their appeal within a reasonable time after the alleged misrepresentations should have been discovered. *Appeal of Girolamo, supra.*

## B. *Standing*

In general, an appeal from a zoning decision may be taken by any person aggrieved by the decision. See *Cablevision—Division of Sammons Communications Inc. v. The Zoning Hearing Board of City of Easton,* 13 Pa. Commw. 232, 320 A.2d 388 (1974), *overruled on other grounds; Miller v. Upper Allen Township Zoning Hearing Board,* 112 Pa. Commw. 274, 535 A.2d 1195 (1987); 53 P.S. §1107. A "person aggrieved" must have a direct interest in the subject matter of the litigation, which interest must be adversely affected by the challenged action. *Cablevision* at 235, 320 A.2d at 390. Moreover, the person's interest must be substantial, immediate or direct, and not a remote consequence of the judgment. *Id.* The objector can be an abutting property owner or an owner in the immediate vicinity as long as the objector falls within the definition of an aggrieved person as set forth above. See *In re The Appeal of Farmland Industries Inc.,* 109 Pa. Commw. 304, 531 A.2d 79 (1987).

With respect to Prizm and Preit, it is alleged that each has standing based on the direct and adverse pecuniary impact of the Planning Commission's decision. Particularly, both parties assert that each will "lose critical tenants and a readily foreseeable percentage of their revenue" because of the Planning Commission's approval of the intervenor's project. (See petitioner's brief, p. 10.) Like the objector in *In re Farmland, supra,* petitioner's argument is misplaced and insufficient to establish standing. In *In re Farmland,* the objector opposed a zoning variance granted to a competitor, Stop-n-Go (appellee), which was located approximately one-half mile from the

objector's place of business. In concluding that the objector lacked standing to appeal the zoning decision, the court held that the objector was not a person aggrieved because its interest was not substantial and immediate in that, like here, the zoning decision had no effect on the objector's property. *Id.* at 314, 531 A.2d at 83. Instead, the court reasoned that the objector was impermissibly using the appeal process to impede the location of a competitor in its trading area. *Id.* at 314-15, 531 A.2d at 84. This idea of competitive harm has consistently been held *not* to confer the aggrieved party standing in zoning cases. *Id.; Nernberg v. City of Pittsburgh,* 153 Pa. Commw. 219, 226, 620 A.2d 692, 696 (1993) (holding that the possibility of competition, *i.e.,* competitive harm, is not sufficient to confer an aggrieved party standing in a zoning case).

Next, the petitioner also contends that, as in the case of *Application of El Rancho Grande Inc.,* 496 Pa. 496, 437 A.2d 1150 (1981), standing is present because the petitioners are possibly the only persons financially affected enough to be able and/or willing to mount an appeal [that] would be "vigorous and reliable" representations of the public interest. (See petitioner's brief, pp. 11-12.) Again, we find petitioner's reliance upon *El Rancho* to be misplaced.

In *Application of El Rancho, supra,* the standing issue before that court did not pertain to a zoning case, but rather a statutory violation of the Liquor Control Board. Specifically, the court held that because the competition's economic injury was so "inextricably intertwined" with the goals of the liquor code to restrain the sale of liquor, not promote it, that standing would be conferred upon

the competitors to challenge the board's issuance of a liquor license in excess of the prescribed statutory quota. See *Application of El Rancho, supra* at 508, 437 A.2d at 1155. Here, as previously mentioned, the case at bar concerns standing in zoning/land use cases. In fact, the court in *Nernberg,* in distinguishing *El Rancho,* stated that the zoning ordinance, unlike the liquor code, is not part of a regulatory scheme to protect against competitive injury and thus competition is not the kind of direct injury which gives rise to standing in zoning cases. See *Nernberg, supra* at 227, 620 A.2d at 696. Therefore, we conclude that *El Rancho* is inapplicable to the facts of the instant case.

Having determined that petitioners Prizm and Preit cannot rely upon economic harm to achieve standing to file an appeal from the Planning Commission's decision, we turn now to the standing of petitioner, Diann Van Louvender.

In reviewing petitioner's brief, it is alleged that standing is conferred upon Ms. Van Louvender because, as a resident of Moosic, she can challenge a land use decision that will impact on conservation-zoned land so designated to protect the natural and scenic value of her community. (See petitioner's brief, p. 9.) In support of her claim for standing, Ms. Van Louvender submitted an affidavit, the particulars of which are as follows:

"*Affidavit of Diann Van Louvender*

"I, Diann Van Louvender, hereby duly sworn, depose and state:

"(1) I am a taxpayer, homeowner and resident of the Borough of Moosic;

"(2) I am currently not employed and was last employed at the now defunct Techneglas plant which was located in Jenkins Township, Luzerne County, Pennsylvania.

"(3) My home is located at 618 Boise Street, Moosic Borough, Pennsylvania.

"(4) I believe that the land that is to be used for the proposed Shoppes at Montage development is, at least in part, properly zoned as a conservation zone.

"(5) I believe that Moosic Borough's Planning Commission illegally approved the Shoppes at Montage development because it lies within an area zoned for conservation development.

"(6) My interest in the illegal decision of the Moosic Borough Planning Commission is direct, immediate, and substantial.

"(7) Specifically, I want to preserve the natural, scenic, recreational and aesthetic values of the land sought to be developed for Shoppes at Montage.

"(8) Moosic's conservation zone as properly delineated will preserve the values I hold dear.

"I make the foregoing statements knowingly, truthfully and under penalty of perjury.

"/s/Diann Van Louvender" (See exhibit 6 to petitioner's brief.)

Although the record is silent on the issue, it was asserted at argument that Ms. Van Louvender's residence is approximately two miles from the subject property. In further support of her position, petitioner contends that, since the Commonwealth's Constitution "gives people

the right to the preservation of natural, scenic, historic, and aesthetic values of the environment, that residents of a municipality have standing when the municipality fails to uphold its ordinances designed to preserve and conserve such areas." (See petitioner's brief, p. 9.) In support of her position, petitioner relies upon *White v. Township of Upper St. Clair,* 799 A.2d 188 (Pa. Commw. 2002).

This court finds *White v. Township of Upper St. Clair, supra,* to be factually remote from the case at bar. In *White,* residents of the township brought an action seeking declaratory and injunctive relief challenging the construction of a 350-foot high communications tower in a public park which was conveyed to the township under deed. The deed conveyed to the township limited the use of the subject property to recreation, conservation, and historic purposes.[5] The conveyance and acceptance of the deed constituted a clear dedication to the purposes specified therein and the residents of the community, as taxpayers therein, had standing to contest any infringement on the use of the public park. In essence, the court held that the objectors had standing to enforce the terms of a deed dedication of public land.

Conversely, the respondents/intervenors rely upon the Commonwealth Court case of *Application of Rouse &*

---

5. The subject park consisted of 200 acres which had remained undeveloped and consisted of rolling hills, forest, meadows and wetlands traversed by hiking trails. It served as a reserve for wild flora and fauna. The township's conservation plan designated the park for recreational purposes and further recited the township's commitment to preserve open space.

*Associates Ship Road Land Limited Partnership,* 161 Pa. Commw. 52, 636 A.2d 231 (1993). In *Application of Rouse,* the developer, Rouse & Assoc., submitted a preliminary subdivision and land development plan with East Whiteland Township. Over the objections of interested residents of the municipality as well as wildlife/ conservation organizations, the developer was granted preliminary approval of the subdivision plan. An appeal was taken to the trial court. The trial court dismissed the objectors' appeal for a variety of reasons, one of which was standing.

"After the withdrawal of the resident objectors, the remaining objectors do not own any property that will be affected by the subdivision plan, but merely assert that the waterways they seek to protect and utilize for recreational purposes will be adversely affected by the planned sewage treatment method. The remaining objectors' interest in the decision is not sufficiently immediate, substantial, or direct because they assert only an abstract *potential* injury to their recreational activities. As such, the remaining objectors' interest in appealing the supervisors' decision is simply too tenuous to confer standing upon them." *Id.* at 58-59, 636 A.2d at 235. (emphasis in original) (citations omitted)

In assessing the respective positions of the respective parties, we feel that the case at bar is more analogous to the case of *Application of Rouse, supra.* From a literal reading of her affidavit, Ms. Van Louvender's claim of standing is one predicated upon her interest in preserving, in its entirety, those lands which have been zoned CN. Unlike *White, supra,* there is no claim that the subject land within this conservation zone is public land and

correspondingly, there is no legitimate claim or right to use the same for recreational purposes or otherwise. Because of the lack of proximity to the subject site, there is no direct or indirect harm claimed by Ms. Van Louvender to her property interest. Her interests in maintaining the scenic nature of the environment is indistinguishable from those of the general public irrespective of residence or boundaries. The law requires that in order for one to be "aggrieved," the objectors' interests in the decision must be sufficiently immediate, substantial, and/or direct and not a remote consequence thereof. Although her concerns are well-intended, Ms. Van Louvender's interest as expressed in her affidavit falls short of the applicable standard. To hold otherwise would be validating a standing claim that has no parameters or boundaries,

## ORDER

And now February 3, 2006, upon consideration of petitioners' request for nunc pro tunc relief, respondents/ intervenors' motion to quash, briefs in support of and in opposition thereto, as well as argument of counsel, it is hereby ordered and decreed as follows:

(1) With regard to the issue of standing, respondents/ intervenors' motion to quash is hereby granted;

(2) Notwithstanding the above, and with regard to the issues of timeliness and existence of extraordinary circumstances concerning petitioners' request for nunc pro tunc relief, respondents/intervenors' joint motion to quash land use appeal is hereby granted. For reasons recited in this court's foregoing memorandum, petitioners' petition for nunc pro tunc relief is hereby denied.