916 A.2d 624

**CITIZENS AGAINST GAMBLING SUBSIDIES, INC., and Paul F. Curry, Petitioners,**

v.

**PENNSYLVANIA GAMING CONTROL BOARD, Respondent,**

**Presque Isle Downs, Inc., Intervenor.**

Supreme Court of Pennsylvania.

Feb. 23, 2007.

Paul Franklin Curry, Esq., Erie, for Citizens Against Gambling Subsidies, Inc., et al.

Richard Douglas Sherman, Linda S. Lloyd, Esq., Harrisburg, for Pennsylvania Gaming Control Board.

George Thompson Bell, III, Esq., Reading, for Presque Isle Downs, Inc.

Edson R. Arneault, Chester, WV, for MTR Gaming Group, Inc.

## *OPINION*

PER CURIAM.

The above-captioned petition for review was filed in this Court's exclusive appellate jurisdiction under the Race Horse Development and Gaming Act, 4 Pa.C.S. §§ 1101–1904 (the "Act"). On February 7, 2007, we issued a *per curiam* Order dismissing the petition, and this opinion follows.

The petition for review embodied a challenge to the Gaming Control Board's issuance of a conditional slot machines license to Intervenor, Presque Isle Downs, Inc., for a location in Erie. Subject matter jurisdiction was supported under 4 Pa.C.S. § 1204 ("The Supreme Court of Pennsylvania shall be vested with exclusive appellate jurisdiction to consider appeals of any final order, determination or decision of the board involving the approval, issuance, denial or conditioning of all licensed entity applications.").

Petitioners are an individual and organization that oppose the use of gaming revenues to subsidize slot machine licenses. One of Petitioners' central averments was that Intervenor negotiated with local government units to leverage local assessment revenues into "kick backs," in violation of the provisions and underlying intent of the Act. Petitioners also complained that individuals alleged to be associated with Intervenor made unlawful political contributions and are of un-

suitable character to be associated with gaming activity. Although the conditional license would restrict Intervenor's entanglements with several of those individuals, Petitioners suggested that the basis for these restrictions should have been further developed by the Board so that their impact on Intervenor could be fairly assessed. Additionally, Petitioners claimed that the Board acted arbitrarily and capriciously in failing to conduct a full investigation, disregarding specific issues raised by them, and failing to issue an adequate disposition. Petitioners also challenged various of the Board's findings and conclusions in the licensing matter, alleging that the Board has licensed and sanctioned an underfunded and disreputable entity. Petitioners requested that the conditional license be voided and that Intervenor be declared ineligible for a slot machine license or, in the alternative, that the matter be remanded to the Board for further investigations, hearings, and specific findings of fact and conclusions of law.

Presque Isle intervened in the proceedings on appeal and applied for summary relief under Pa.R.A.P. 1532(b), as well as expedited consideration. In terms of expedited consideration, Intervenor contended that the petition threatened to disrupt a time sensitive economic development project, which is of substantial public importance. Intervenor stressed that, under the Gaming Act, the actual issuance of a license is contingent upon the passage of the 30–day appeal period without a pending legal challenge. *See* 4 Pa.C.S. § 1301. According to Intervenor, the General Assembly has recognized the time sensitivity of these matters by delegating wide-ranging discretion to the Board, channeling review of the Board's licensing decisions directly to the Pennsylvania Supreme Court, and defining the scope of judicial review narrowly.

The application for summary relief was based on an asserted lack of standing. First, Intervenor alleged that the organizational petitioner, Citizens Against Gambling Subsidies, Inc. ("Citizens"), did not even exist until the day after the petition for review was purportedly filed on its behalf. Moreover, Intervenor argued that neither Citizens nor the individual

petitioner, Paul F. Curry, Esquire, was even arguably aggrieved by the Board's action in any way different from the public at large. Therefore, citing *Pittsburgh Palisades Park, L.L.C. v. Commonwealth*, 585 Pa. 196, 888 A.2d 655 (2005), Intervenor claimed that Petitioners lacked the sort of direct, immediate and substantial interest necessary to confer standing.

The Board has filed a brief in support of Intervenor's motion for summary relief, adopting Intervenor's arguments and adding a contention that Petitioners lack standing because they failed to intervene in the proceedings before the Board. Since Petitioners therefore lacked party status, according to the Board, they could not appeal.

In their reply to the application for summary relief, Petitioners averred that Curry was a resident of Erie County, that he was a property owner and a taxpayer, and that Citizens had been an unincorporated association since March 2006. Further, Petitioners indicated that, as a general legal practitioner and Solicitor for the City of Erie from March 2002 through January 2006, Petitioner Curry was intimately familiar with the claimed governmental subsidization of Intervenor. Petitioners asserted that they were directly aggrieved by the issuance of the conditional license, and, in the alternative, asserted taxpayer standing. Additionally, they alleged that a failure on the part of this Court to redress governmental subsidization of slot license issuance will "open the floodgates for one slot licensee after another to take advantage of local municipal officials and obtain kickbacks of gaming revenues."

On January 19, 2006, this Court issued a rule to show cause directing Petitioners to respond to the Board's argument that their failure to intervene in the administrative proceedings deprived them of standing to appeal. Petitioners responded with the argument that they are entitled to appeal the Board's order pursuant to the constitutional right to a direct appeal, PA. CONST. art. V, § 9, and Section 702 of the Administrative Agency Law, 2 Pa.C.S. § 702 ("Any person aggrieved by an adjudication of a Commonwealth agency who has a direct

interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42."). In particular, Petitioners referenced the decision in *Application of El Rancho Grande, Inc.,* 496 Pa. 496, 437 A.2d 1150 (1981), holding that liquor licensees in Potter County could appeal the grant of a license to another, although they had not intervened in the application proceedings before the Pennsylvania Liquor Control Board. Petitioners asserted that, analogously, anyone who is aggrieved may appeal in any administrative proceeding without the need to intervene. Further, they contended that they reasonably relied on the Board to adequately protect the public interest of the citizens of the Commonwealth, a duty that they now assert that the Board has failed to fulfill.

The Board's position was that it does not offend the Constitution to require persons who seek to challenge administrative decisions to exercise their right to be heard at a meaningful time in the administrative process. Indeed, the Board noted that its regulations allow for permissive intervention. *See* 58 Pa.Code § 441.19(y). Further, the Board observed that this Court is vested with jurisdiction over gaming appeals under the Pennsylvania Race Horse Development and Gaming Act, see 4 Pa.C.S. § 1204, and not the Administrative Agency Law. Thus, it believed, the *El Rancho Grande* case is irrelevant. Moreover, even under *El Rancho Grande,* the Board developed, a petitioner must have a direct interest in the agency adjudication, *see* 2 Pa.C.S. § 702,[1] which the Board contended Petitioners lacked. The Board also highlighted Petitioners' statement that they made a "decision not to go to the expense and time of seeking permissive intervention," *see* Petitioners' Brief at 11, and characterized such decision as a knowing, voluntary, and intelligent waiver of any right to pursue an

1. *See also* G. RONALD DARLINGTON, KEVIN J. MCKEON, DANIEL R. SCHUCKERS & KRISTEN W. BROWN, PENNSYLVANIA APPELLATE PRACTICE 2D § 501:14 (2d ed. 1998 & Supp. Nov. 2004) (citing *El Rancho Grande* for the proposition that "an appeal from a Commonwealth agency adjudication may be taken by an aggrieved party ... who has a direct ... interest in the adjudication").

appeal. Finally, the Board discussed the doctrine of exhaustion of administrative remedies by way of analogy.

Intervenor added that Petitioners' strategic refusal to intervene left this Court without any record concerning standing, and correspondingly, with no basis to review their claims concerning their interest. It suggested that permitting any citizen with a difference of opinion to second guess the Board's decisions and delay the implementation of a licensing decision indefinitely would frustrate the General Assembly's expressed goal that gaming be promptly implemented. Intervenor also contended that *El Rancho Grande* actually supported its position, since in that case the appealing licensees' standing was recognized, in large measure, based on their actual participation in the administrative proceedings; whereas an association which had not so participated was denied the opportunity to participate in the appeal. *See El Rancho Grande*, 437 A.2d at 1155–56. Finally, Intervenor asserted that Petitioners' claim that a broad right of appeal from agency decisions should be recognized is directly contrary to the narrow and streamlined review contemplated by the General Assembly for orders of the Gaming Control Board. *See* 4 Pa.C.S. § 1204.

 Upon review, we agreed with the Board's and Intervenor's position that Petitioners lacked standing to appeal because they failed to intervene in the administrative proceedings before the Board. Although matters of standing may involve factual questions, as developed below, here the essential facts were uncontested. Therefore, this case was resolved on the legal issues, over which our review is plenary.

 Standing to appeal generally requires both status as a party and aggrievement. *See* Pa.R.A.P. 501 (Except where the right to appeal is enlarged by statute, any party who is aggrieved by an appealable order . . . may appeal therefrom). *See generally In re Barnes Foundation*, 582 Pa. 370, 871 A.2d 792, 794 (2005). The rights and liabilities of a party to an action may be attained, where appropriate, through intervention in the tribunal having original jurisdiction. *See Appeal of*

*Municipality of Penn Hills*, 519 Pa. 164, 546 A.2d 50, 52 (1988). The traditional test for aggrievement entails demonstration of a direct, immediate, and substantial interest. *See William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269, 280 (1975). The purpose of this requirement is to guard against improper litigants by requiring some proof of an interest in the outcome that surpasses the common interest of all citizens. *See Application of Biester*, 487 Pa. 438, 409 A.2d 848, 851 (1979) (citing *William Penn*, 346 A.2d at 281).

▮▮▮ As Petitioners highlight, by virtue of Section 702 of the Administrative Agency Law, neither party status nor traditional aggrievement is necessary to challenge actions of an administrative agency. Rather, standing to appeal administrative decisions extends to "persons," including non-parties, who have a "direct interest" in the subject matter, as distinguished from a "direct, immediate, and substantial" interest. *El Rancho Grande*, 437 A.2d at 1152 (quoting 2 Pa.C.S. § 702). A direct interest requires a showing that the matter complained of caused harm to the person's interest. *South Whitehall Township Police Service v. South Whitehall Township*, 521 Pa. 82, 555 A.2d 793, 795 (1989). Although not the full equivalent of "direct, immediate, and substantial," the direct interest requirement retains the function of differentiating material interests that are discrete to some person or limited class of persons from more diffuse ones that are common among the citizenry.

In their submissions in the present matter, Petitioners' sole assertion of a direct interest arose from Petitioner Curry's status as a taxpayer and property owner in Erie County. *See* Petitioners' Reply to Intervenor's Application for Summary Relief ¶ 2. It would unduly dilute the requirement if we were to accept that diffuse financial impact common to all taxpayers and property owners would suffice to establish a direct interest. Indeed, Petitioners did not advance their claim of a direct interest in their memorandum of law in reply to Inter-

venor's motion for summary relief, but rather, relied entirely on their assertion of taxpayer standing. Further, in so doing, they essentially conceded that they lacked a direct interest. *See* Petitioners' Memorandum of Law in Reply to Intervenor's Motion for Summary Relief at 5 ("[T]hose directly and immediately affected by the [Board's] action are directly benefited and not inclined to challenge the Board's action."). Because Petitioners lacked a direct interesting the licensing proceedings, Section 702 of the Administrative Agency Law did not support their appeal effort.[2]

█ The remaining question is whether taxpayer standing can be invoked as a basis to support a non-party appeal of a licensing decision, absent intervention. We have determined that it cannot. Courts have recognized taxpayer standing as an exception to the general requirement of aggrievement in circumstances in which government action might otherwise go unchallenged. *See Biester*, 409 A.2d at 851 n. 5. Taxpayer standing has been considered by this Court in various contexts, but it is generally applied as a basis to support a challenge before a court or agency having original jurisdiction,[3] and not as a justification for an initial entry onto the record of an existing adjudicative matter for the first time via the filing of an appeal. We agree with the Board and Intervenor that permitting an appeal based on taxpayer standing alone absent intervention in the administrative proceedings is

2. In light of this conclusion, it is not necessary to fully resolve the Board's argument that the Administrative Agency Law is inapplicable to proceedings before it. We do note, however, that the Gaming Act contains some cross-references to the Administrative Agency Law. For example, in the provision defining this Court's jurisdiction over licensing appeals, the Legislature expressed its intent to supersede the Administrative Agency Law, *see* 4 Pa.C.S. § 1204, thus suggesting that that enactment's requirements may otherwise apply to other aspects of administrative proceedings under the Gaming Act where those requirements are not specifically overridden.

3. *See, e.g., Stilp v. Commonwealth*, 588 Pa. 539, 905 A.2d 918, 950–51 (2006); *Sprague v. Casey*, 520 Pa. 38, 550 A.2d 184, 187 (1988); *Ezy Parks v. Larson*, 499 Pa. 615, 454 A.2d 928, 934 (1982); *Lutz Appellate Printers, Inc. v. Department of Property and Supplies*, 472 Pa. 28, 370 A.2d 1210, 1212 (1977).

inconsistent with orderly rules of procedure and would foster untenable impracticalities in terms of the development of an essential record for consideration on appeal. *See generally* DARLINGTON, ET AL., PENNSYLVANIA APPELLATE PRACTICE 2D § 501:7 ("[I]t behooves an individual or group that is interesting in issues in a matter pending in the Pennsylvania courts or agencies to attain intervenor status at the lower level as soon as possible. The failure to attain intervenor status obviates the ability to file an appeal."). Further, given that the Legislature conditioned the issuance of licenses upon the finality of the licensing proceedings,[4] we think it unlikely that the Assembly intended to authorize nonparty appeals by those lacking a direct interest.[5] Finally, it has always been understood that the right of appeal under Article V, Section 9 of the Pennsylvania Constitution is effectuated through compliance with reasonable, orderly procedures.

Our review is concluded, and the record has been remanded to the Board under our prior Order.

---

4. *See* 4 Pa.C.S. §§ 1301, 1103 (defining license "issuance" in terms of "the date when a determination by the commissions or the board approving an application brought before the agencies becomes final, binding and nonappealable and is not subject to a pending legal challenge").

5. As the Board and Intervenor highlight, Petitioners have acknowledged that they had notice of the licensing proceedings and made a decision not to intervene. *See* Petitioners' Brief at 11. In these circumstances, we need not address what recourse non-parties might have to participate in an appeal with regard to, or to otherwise challenge, administrative action where timely notice is absent.