966 A.2d 1188 (2009)
MALT BEVERAGES DISTRIBUTORS ASSOCIATION and Lackawanna Distribution Corp., Petitioners
v.
PENNSYLVANIA LIQUOR CONTROL BOARD, Respondent.
No. 518 C.D. 2008.
Commonwealth Court of Pennsylvania.
Argued December 10, 2008.
Decided March 2, 2009.
*1189 Robert B. Hoffman, Harrisburg, for petitioner.
Rodrigo J. Diaz, Executive Deputy Chief Counsel, Harrisburg, for respondent.
Robert J. O'Hara, III and Stanley J. Wolowski, Pittsburgh, for intervenor, Wegmans Food Markets, Inc.
BEFORE: LEADBETTER, President Judge, SMITH-RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge,[1] COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.
OPINION BY Judge SIMPSON.
In this appeal from an order of the Pennsylvania Liquor Control Board (PLCB), Malt Beverage Distributors Association (MBDA) and Lackawanna Distribution Corp. (Lackawanna), ask whether the PLCB erred in granting Wegmans Food Markets, Inc.'s (Wegmans) application for a restaurant liquor license at its store in Dickson City, Pennsylvania. The PLCB denied MBDA and Lackawanna intervenor status because they filed an untimely joint motion to intervene in the licensure proceedings and they offered no explanation for the delay in filing their motion to intervene. Because we discern no abuse of discretion in the PLCB's denial of the untimely motion to intervene, we affirm.

I. Background
On January 29, 2007, Wegmans filed an application for the double transfer of Restaurant Liquor License No. R-14953 from Denny's, Inc., 410 Scranton Carbondale Highway, Dickson City, Scranton, Pennsylvania, to itself, for the premises located at 1315 Scranton Carbondale Highway, Dickson City, Scranton, Pennsylvania. Wegmans posted its notice of application, which provided public notice of the pending application, at its Dickson City location on January 26, 2007. MBDA and Lackawanna filed a joint motion to intervene in the licensure proceedings on March 5, 2007. Wegmans filed an answer, requesting the PLCB deny the motion to intervene as untimely based upon Section 17.13(b) of the PLCB's regulations. See 40 Pa.Code § 17.13(b) (requiring a petition to intervene be filed with the PLCB within 30 days of the posting of the notice of application).
The PLCB's Bureau of Licensing (Bureau) informed Wegmans it would conduct a hearing to take evidence regarding several objections by the Bureau, including:
1) The [PLCB] shall take evidence to determine if it should permit an interior connection to the unlicensed grocery store in accordance with Section 3.52(b) of the [PLCB's] Regulations.
2) The [PLCB] shall take evidence to determine whether it should permit [Wegmans] to operate another business on the licensed premises (the storage and preparation of food items for the unlicensed grocery store as well as grocery item sales), in accordance with Section 3.52(c) of the [PLCB's] Regulations.
3) The [PLCB] shall take evidence to determine if [Wegmans] will allow minors to frequent its licensed premises, in violation of Section 493(14) of the Liquor Code.[[2]]
* * * *
5) The [PLCB] shall take evidence and hear argument on the issue of whether the Commonwealth Court decision in Malt Beverage Distributors Association *1190 v. Pennsylvania Liquor Control Board, [918 A.2d 171 (Pa.Cmwlth.), appeal granted, 593 Pa. 413, 931 A.2d 626 (2007)], and/or Section 3.52-3.54 of its Regulations, precludes an interior connection between a supermarket and a restaurant, [notwithstanding] the lack of reference to such a limitation in the Regulation and its predecessors, Regulation 103 and Regulation R-37-27 and further [notwithstanding] the [PLCB's] historical policy of approving such connections when appropriate. [See] Freedman v. Pennsylvania Liquor Control Board, 20 Pa. D & C[.]2d 353 (1954). [See also] Tacony Civic Association v. Pennsylvania Liquor Control Board, 668 A.2d 584 (Pa.Cmwlth.1995).
6) The [PLCB] shall take evidence and hear argument on the issue of whether the Commonwealth Court decision in Malt Beverage Distributors Association v. Pennsylvania Liquor Control Board, [918 A.2d 171 (Pa.Cmwlth.), appeal granted, 593 Pa. 413, 931 A.2d 626 (2007)], and/or Section 3.52-3.54 of its Regulations, imposes a limitation on the size of the unlicensed business, when compared to the size of the licensed business, notwithstanding the lack of reference to such a limitation in the Regulation and its predecessors, Regulation 103 and Regulation R-37-27 and further notwithstanding the [PLCB's] historical interpretation of the Regulations to allow an interior connection to other businesses such as department stores (Wanamakers and Boscov's).
7) The [PLCB] shall take evidence to determine if there is a valid reason for the late-filing of the petition-to-intervene by [MBDA] and [Lackawanna] and if a valid reason exists, if they would be directly aggrieved by the granting of this application, which would qualify them as intervenors in this matter. See In re Application of Family Style Restaurant, Inc., 503 Pa. 109, 468 A.2d 1088 (1983); Malt Beverage Distributors Association v. Pennsylvania Liquor Control Bd., 881 A.2d 37 (Pa.Cmwlth.2005).
8) The [PLCB] shall take evidence to determine that the approval of this application will not adversely affect the health, welfare, peace and morals of the neighborhood within a radius of 500 feet of the proposed licensed premises....
PLCB Op., Finding of Fact (F.F.) No. 2. A hearing ensued before a PLCB hearing examiner.[3]
Ultimately, the PLCB issued an order approving Wegmans' license application. The order indicated if an appeal was filed the PLCB would issue an opinion in support of its order. Additionally, the PLCB issued letters to representatives of MBDA and Lackawanna in which it informed these entities that it denied them intervenor status because their joint petition to intervene was untimely and they did not show good cause for their late filing. MBDA and Lackawanna filed a petition for review to this Court, and the PLCB issued an opinion in support of its order.[4]

*1191 II. PLCB's Opinion

A. PLCB's Findings
The PLCB's opinion in support of its order approving Wegmans' license application contained 399 findings, which are summarized below.
Gary Grochowski, a PLCB licensing investigator, testified concerning his investigation of Wegmans' double license transfer application and the proposed interior connections. Grochowski testified at the time of his investigation, Wegmans had properly posted a "Notice of Application" at its Dickson City location that showed a posting date of January 26, 2007. F.F. No. 24. Grochowski further testified Wegmans' Dickson City location consists of a one-story building that houses a grocery store and the proposed licensed restaurant area. He explained the proposed licensed restaurant area is a cafeteria-style restaurant, which offers a wide array of food items. Grochowski also testified there would be several interior connections between the unlicensed grocery store and the proposed licensed restaurant area. He explained there would be three, four-foot high walls in several locations to form the boundary between the unlicensed grocery store and the proposed licensed restaurant area. Grochowski testified malt and brewed beverages would be offered for consumption in the restaurant and for takeout in six-packs and single-serving sizes. He explained customers would have to purchase malt or brewed beverages from a separate cash register located in the proposed licensed area. Grochowski also testified the proposed licensed premises would not be within 200 feet of any other licensees or within 300 feet of any restrictive institutions.
The Bureau also presented evidence that the PLCB previously issued licenses to Boscov's, John Wanamaker's and Wawa, Inc., all of which had restaurants with interior connections to retail stores.
MBDA presented the testimony of Mary Lou Hogan, MBDA's chief counsel and executive secretary. Hogan explained MBDA is a trade association for malt beverage distributors in Pennsylvania, which is comprised of 430 members. Hogan testified MBDA's basic concern with regard to Wegmans' application is the economic impact on distributors if a supermarket the size of Wegmans is permitted to sell beer. She testified MBDA believes the difference between Wegmans and a typical restaurant licensee is that customers who patronize Wegmans are there to buy grocery items, which beer distributors cannot sell. She further explained Wegmans' customers would be able to purchase beer in direct competition with distributors. Hogan testified MBDA is concerned that, because Wegmans sells a multitude of grocery items, the sale of beer at Wegmans could attract customers who might not otherwise be contemplating a beer purchase. Hogan further testified Wegmans would attract customers for take-out beer sales and distributors could not compete with that because distributors are required to sell beer by the case, while restaurants can sell beer in six-packs. Hogan further testified if Wegmans obtained a restaurant liquor license many of its sales could come at the expense of distributors and, as a result, a number of area distributors would go out of business. Hogan noted there are twenty-three distributors and six importing distributors in Lackawanna County. Hogan explained the sale of beer by Wegmans would have a direct and indirect negative impact on all distributors in the *1192 state. Specifically, she explained, the direct impact would be for distributors in the immediate area of Wegmans, while the indirect impact would be as a result of other supermarkets across the state obtaining licenses to sell beer.
In addition to Hogan's testimony, Barbara Lynch, a member of MBDA, and the owner of Lackawanna Distribution Corp. t/a Brewer's Outlet, which holds a distributor license, testified her distributorship is located about five miles from Wegmans' Dickson City location. Lynch testified approximately 75 percent of the products she sells are malt or brewed beverages. Based on her experience selling beer, Lynch testified she believes beer distributors would suffer if Wegmans obtained the requested license. She testified she is concerned that Wegmans' restaurant area is large enough that it could become a small distributor with better pricing than she can offer customers. Lynch further explained she is concerned because Wegmans can sell a broad array of products that she is unable to sell at her distributorship. Lynch testified her concerns are based on the price and volume at which Wegmans can sell. As to the untimely joint motion to intervene, Lynch explained she only became aware of the notice of application posted on Wegmans' premises through MBDA's counsel. She testified the petition to intervene was filed late because it was "left up to counsel." F.F. No. 104.
Wegmans presented the testimony of David DeMascole, its Regional Beverage Director for Pennsylvania and the general manager of its distribution center in Schuylkill County. As Regional Beverage Manager, DeMascole is responsible for coordinating the opening and introduction of beer sales in the restaurants in Wegmans' stores. DeMascole explained Wegmans began opening restaurants in the 1990s as a way to distinguish itself from other supermarkets and grow its business in the restaurant field. DeMascole explained, compared to large supermarket chains, Wegmans is a small regional chain and it needed to develop a niche, which it did by opening its restaurants over the past 15 years. DeMascole testified the food offered at Wegmans' restaurants is comparable to that served at restaurants such as T.G.I. Friday's or Applebee's, but that Wegmans is at a competitive disadvantage with such restaurants because of its inability to serve a glass of beer with a meal. DeMascole explained that Wegmans would sell beer for both on-site consumption and takeout, but it has not reached a conclusion as to the percentage of on-site consumption versus takeout sales. DeMascole further testified that on-premises consumption of beer would be limited to the licensed areas and only to those customers who purchased meals from the restaurant area. DeMascole also testified, unlike its stores in other states, Wegmans does not anticipate impulse purchases of beer in its Pennsylvania stores because the beer would only be located in the restaurant area of the store, which is not an area that all customers frequent.
Wegmans also presented the testimony of David Grossi, the store manager of its Dickson City location, who is familiar with the store layout and all operational aspects. Grossi testified Wegmans' Dickson City location, which opened in 1994, operates a restaurant under the same roof as the supermarket and that the restaurant opened at the same time as the supermarket. Grossi testified the proposed licensed area is approximately 7,900 square feet. He further testified the restaurant can accommodate 110 customers and consists of a combination of tables and booths. Grossi testified the licensed restaurant portion of Wegmans' Dickson City location would sell beer in individual bottles and *1193 cans for on-premises consumption for those customers consuming a meal at the restaurant and in six-packs for takeout. Grossi explained customers would be able to select beer from lockable coolers in the licensed restaurant area, and they would have to purchase the beer at one of the two designated cash registers within the licensed area. He testified customers who purchase a six-pack from the licensed area could take the beer into the licensed grocery store and continue to shop for groceries. Grossi testified the restaurant area has a separate ingress/egress so that customers can enter/exit the restaurant without traveling through the grocery store. Grossi further testified there would be 20 to 40 people working in the licensed area and the area would be constantly supervised by staff and management. In addition, Grossi explained that an orange placard notifying the public that Wegmans filed an application with the PLCB had been posted conspicuously at the Dickson City location since January 26, 2007.
Wegmans also presented the testimony of Thomas J. Shepstone, an urban planner, who performed a market study at Wegmans' request. Shepstone testified Wegmans is pursuing its business model of niche marketing, particularly with regard to its sale of prepared foods. Shepstone testified he did not believe there would be a negative impact on any beer distributors if Wegmans began selling beer in its restaurants. He explained that, as compared to other supermarkets, Wegmans is more aptly characterized as a "destination," i.e., a store that customers would travel further to reach than a typical grocery store. Shepstone opined other businesses, including beer distributors, near Wegmans actually benefit from their location because Wegmans draws customers to the area that would not otherwise be there. Shepstone also opined it is unlikely that Wegmans' sale of beer would generate many new customers for Wegmans; rather, the sale of beer would primarily serve existing customers. Shepstone also prepared a report regarding the economic effect of Wegmans obtaining a liquor license for its Dickson City store on surrounding distributors, including Brewer's Outlet. Shepstone opined Wegmans would not have an effect on Brewer's Outlet because the businesses are located in different neighborhoods with different customer bases. Shepstone also testified he did not believe Brewer's Outlet would be detrimentally impacted because its business has continued to grow despite the fact it is located next to a supermarket.
Wegmans also presented the testimony of John Rowland Dunham, an economist, who performed an analysis of whether beer sales by Wegmans would have a significant negative impact on beer distributors. Dunham opined neither MBDA nor any individual distributors would be harmed as a result of Wegmans' beer sales and, in his opinion, they may actually benefit. Dunham testified, in his years of experience studying retail establishments, he found similar retail establishments often locate together to enhance all of their businesses. Dunham testified Wegmans is beneficial to nearby businesses based in part on the economic benefit of "clustering," which occurs when retail establishments are located very close to one another. Dunham explained the benefit to other distributors of being located near Wegmans is that Wegmans attracts a large number of customers because it is more than a grocery store, but rather it is a "destination retailer." He testified that, because Wegmans is a destination retailer, other retailers and service businesses in the area benefit from the customers drawn by Wegmans. Dunham further testified sales of cases of beer and six-packs are two different businesses that cater to different *1194 customer bases. He opined Wegmans would not adversely impact distributors, in part, because Wegmans would be limited to selling two six-packs per transaction while distributors sell in much greater quantity. Dunham also agreed with Shepstone's testimony that Wegmans would attract few new customers through the sale of beer.[5] Further, based on the testimony of Hogan and Lynch, and his own examination of area businesses, Dunham testified there was nothing to indicate the grant of a liquor license to Wegmans would negatively impact Brewer's Outlet or any other distributors in the county.
In order to rebut the testimony of Wegmans' experts that more competition helps all businesses, MBDA presented the testimony of Matthew Weinstein, an attorney specializing primarily in retail shopping center development, leasing and financing. He testified that contrary to the testimony of Wegmans' experts, "real world" commercial tenants do not seek to "cluster" or "co-locate" around similar businesses. To that end, Weinstein testified regarding various use restrictions and restrictive covenants commonly placed in commercial leases that are used to deter direct competition between retail tenants. In addition, MBDA presented the testimony of Lee Goldstein, the owner of several strip malls and the operator of a real estate management company. Goldstein generally agreed with Weinstein's testimony regarding commercial leasing.

B. PLCB's Analysis

1. Intervention
As to the joint motion to intervene filed by MBDA and Lackawanna, the PLCB explained:
[Wegmans] applied for double transfer of Restaurant Liquor License No. R-14953 for use in its restaurant at its store in Dickson City/Scranton. In response to the application, MBDA and [Lackawanna] filed an untimely joint petition to intervene in this matter. On April 5, 2007, [the Bureau] notified MBDA and [Lackawanna] that their petition to intervene was conditionally accepted, allowing them to appear at the hearing and offer testimony showing a valid reason for the late filing and if a valid reason existed, to show how they would be directly aggrieved by the grant of this application. Representatives of both entities appeared and testified at the hearing....
A petition to intervene must be filed within thirty (30) days of the posting of the Notice of Application; the [PLCB] may only accept an untimely-filed protest or petition to intervene upon good cause shown. [40 Pa.Code § 17.13(b)]. [MBDA] and [Lackawanna] filed a joint petition to intervene, outside the thirty (30)-day filing period specified by the regulations, and they appeared at the hearing to testify. Thus, the only issue herein is whether they demonstrated good cause for the late-filing of their petition to intervene, and if so, whether they would be directly aggrieved by the grant of this application.
[Wegmans] filed its transfer application on or about January 29, 2007. The Notice of Application, which is meant to give the public notice of pending applications, was posted on January 26, 2007. Every applicant for the transfer of an existing license must post such Notice of Application for a period of at least thirty (30) days beginning with the day the *1195 application is filed with the [PLCB]. [47 P.S. § 4-403(g)]. Thus, anyone who wanted to object to the transfer of the license to [Wegmans] had thirty (30) days from the date of application to file his/her protest or petition to intervene.
The thirty (30)-day period expired on Wednesday, February 28, 2007. MBDA and [Lackawanna] filed a joint petition to intervene on March 5, 2007. Despite being clearly late, no explanation was offered for its late filing in the petition itself or at the hearing, where it was brought up at least three (3) times by counsel for [Wegmans] or the [PLCB]. The only recognition of its lateness came in testimony by [Lackawanna's] owner, Ms. Lynch, who when asked why the petition was filed late, said it was "up to Counsel."
Thus, without any explanation as to why the petition was late-filed, the [PLCB] could hardly find that good cause was shown. See In re Application of Asprey, Inc., 693 A.2d 257 (Pa. Cmwlth.1997). Without good cause shown, the untimely petition to intervene cannot be considered. Therefore, the [PLCB] cannot grant [i]ntervenor status to MBDA and [Lackawanna] in this matter.
PLCB Op. at 109-110, 111-113 (footnotes omitted).

2. Merits
The PLCB also considered whether it should approve an interior connection between the licensed premises and the unlicensed grocery store. It noted that Section 3.52(b) of its regulations provides, "Licensed premises may not have an inside passage or communication to or with any business conducted by the licensee or other persons except as approved by the [PLCB]." 40 Pa.Code § 3.52(b) (emphasis added). The PLCB noted it previously approved interior connections similar to the one at issue here at stores such as Boscov's, John Wanamaker's, and Wawa. The PLCB also determined that, based on evidence regarding the layout of Wegmans' Market Café in relation to the unlicensed grocery store area, there was no reason not to approve the proposed interior connection. It noted the proposed licensed area would be clearly separated from the unlicensed portions of the premises by four-foot high barriers. The PLCB further determined Wegmans' proposal fully complied with the requirements set forth in Sections 3.52-3.54 of the PLCBs regulations, 40 Pa.Code §§ 3.52-3.54. Also, it determined this Courts decision in Malt Beverage Distributors Ass'n v. Pennsylvania Liquor Control Board (Sheetz II), 918 A.2d 171 (Pa. Cmwlth.) (en banc), appeal granted, 593 Pa. 414, 931 A.2d 626 (2007), did not preclude the proposed interior connection between the licensed premises and the unlicensed grocery store. Finally, the PLCB determined that approval of Wegmans' application would not adversely affect the health, welfare, peace and morals of the neighborhood within a radius of 500 feet of the proposed licensed premises.
Based on these findings and determinations, the PLCB approved the application for double transfer of Restaurant Liquor License No. R-14953.

III. Wegmans' Applications for Summary Relief
Shortly after MBDA and Lackawanna filed their petition for review to this Court, Wegmans filed an application for summary relief seeking to quash the petition for review. In its application, Wegmans asserted, because the PLCB denied MBDA and Lackawanna intervenor status, these parties had no basis to seek review of the PLCB's decision granting Wegmans' restaurant liquor license. After argument, a *1196 single judge of this Court issued an order in which he stated, because the PLCB had not yet issued its opinion or filed the certified record with this Court, Wegmans did not have a clear right to relief under Pa. R.A.P. 1532(b). As such, he denied Wegmans' application without prejudice, allowing Wegmans to re-file its application for summary relief after this Court received the PLCB's opinion and the certified record.
After the PLCB filed its opinion and certified record, Wegmans re-filed its application for summary relief, again asking this Court to quash the petition for review filed by MBDA and Lackawanna. Wegmans again asserted, because the PLCB denied MBDA and Lackawanna intervenor status, these entities had no basis to seek review of the PLCB's order granting Wegmans' license application. Wegmans further argued MBDA and Lackawanna could only seek review of the PLCB's decision denying them intervenor status rather than of the merits of the PLCB's decision granting the application. Ultimately, a different single judge of this Court granted Wegmans' application for summary relief and quashed the petition for review filed by MBDA and Lackawanna.
MBDA and Lackawanna subsequently filed an application for reconsideration of the decision quashing its petition for review. This Court granted the motion for reconsideration, reinstated the petition for review, and directed the parties to file briefs on the merits and in support of the motion to quash.[6] This matter is now before the Court for disposition.[7]

IV. Discussion
Wegmans argues the PLCB properly denied intervenor status to MBDA and Lackawanna for the following reasons: (1) it correctly found MBDA and Lackawanna did not object to the transfer of a license to Wegmans' Dickson City restaurant within the 30-day period required by 40 Pa.Code § 17.13; (2) it correctly found MBDA and Lackawanna offered no explanation, let alone good cause, for the late filing; and, (3) it correctly found, due to the lack of good cause for the late filing, the petition to intervene filed by MBDA and Lackawanna could not be considered. Therefore, Wegmans asserts, the PLCB's denial of intervenor status and standing to MBDA and Lackawanna must be upheld.
Wegmans also contends, because MBDA and Lackawanna unequivocally failed to meet the requirements necessary to intervene and thus lack standing, the arguments raised in their petition for review in opposition to the license transfer should not be considered by this Court. It further asserts, even if this Court addressed those arguments, the objections raised by MBDA and Lackawanna as to the approval of the license transfer are meritless.
Wegmans maintains it properly filed an application for summary relief to quash the petition for review filed by MBDA and Lackawanna. It argues there are no disputed issues of material fact as to whether MBDA and Lackawanna failed to timely *1197 intervene or present good cause for their delay. Wegmans maintains MBDA and Lackawanna indisputably failed to achieve intervenor status below. Thus, it asserts, the appeal filed by MBDA and Lackawanna is frivolous and should be dismissed by this Court.
Similarly, the PLCB argues it properly denied MBDA and Lackawanna standing as intervenors here. The PLCB asserts it denied these parties intervenor status only after they were given an opportunity at a hearing to show good cause for the late filing of their petition to intervene. The PLCB contends, because MBDA and Lackawanna offered absolutely no cause, good or otherwise, for their late filing, the PLCB refused the petition to intervene as required by 40 Pa.Code § 17.13(b).
MBDA and Lackawanna respond the PLCB erred in failing to excuse the minimal delay in the filing of their joint petition to intervene under the "unusual circumstances of the "Wegmans' cases." Petitioners' Reply Br. at 3. They contend the PLCB had discretion to overlook this de minimis procedural error. See Pa. R.C.P. No. 126 (allowing a court to disregard procedural errors that do not affect the substantial rights of the parties); 1 Pa.Code § 31.2 (provisions should be liberally construed to secure the just, speedy and inexpensive determination of issues presented); 40 Pa.Code § 15.2 (providing for liberal construction of PLCB regulations). MBDA and Lackawanna point out that the delay in filing their petition to intervene was only from February 28 to March 5, 2007 (a Wednesday to a Monday), the delay caused no harm to anyone, and the hearing was not held until almost eight months later.
Granting or denying a petition to intervene is within the sound discretion of the agency involved. W. Chester Area Sch. Dist. v. Collegium Charter Sch., 571 Pa. 503, 812 A.2d 1172 (2002); Wilkinsburg Educ. Ass'n v. Sch. Dist. of Wilkinsburg, 690 A.2d 1252 (Pa.Cmwlth.1996). A decision on intervention will not be disturbed unless there has been a manifest abuse of discretion. Wilkinsburg Educ. Ass'n.
Pursuant to Section 17.13(b) of the PLCB's regulations, 40 Pa.Code § 17.13(b), a petition to intervene "shall be filed with the [PLCB] within 30 days of the posting of notice of application.... The [PLCB] may accept an untimely filed ... petition to intervene, but only upon good cause shown."
Here, MBDA and Lackawanna do not dispute their joint motion to intervene was filed more than 30 days after Wegmans posted its notice of application at its Dickson City location. Further, at no time before the PLCB (or in their brief to this Court) did MBDA and Lackawanna show they had good cause for their untimely filing. Consequently, we discern no abuse of discretion in the PLCB's decision denying MBDA and Lackawanna standing to intervene in the licensure proceedings for Wegmans' Dickson City location. 40 Pa. Code § 17.13(b); see In re Application of Asprey, Inc., 693 A.2d 257 (Pa.Cmwlth. 1997) (PLCB did not abuse its discretion in denying petition to intervene where party did not file petition within 30 days of posting of proposed licensed premises and did not show good cause for failing to timely file petition).
Moreover, Pa. R.C.P. No. 126, cited by MBDA and Lackawanna, does not provide a basis to excuse their untimely filing. Indeed, the Pennsylvania Rules of Civil Procedure do not apply to proceedings before administrative agencies and commissions. McClean v. Unemployment Comp. Bd. of Review, 908 A.2d 956 (Pa.Cmwlth. 2006); McGlawn v. Pa. Human Rels. *1198 Comm'n, 891 A.2d 757 (Pa.Cmwlth.2006). Therefore, Pa. R.C.P. No. 126 is inapplicable here.
Similarly, Section 31.2 of the General Rules of Administrative Practice and Procedure, 1 Pa.Code § 31.2 (entitled "Liberal construction."), which states, "[t]his part shall be liberally construed to secure just, speedy and inexpensive determination of the issues presented," does not operate to require the PLCB to accept an untimely petition to intervene absent good cause.[8]
In Skyvue Terrace, Inc. v. Department of Public Welfare, 85 Pa.Cmwlth. 123, 482 A.2d 58 (1984), this Court declined to apply 1 Pa.Code § 31.2 so as to excuse a party's failure to comply with a regulation relating to the timeliness of filings. Determining the language of the regulation at issue was clear with regard to the method for filing certain documents, we rejected a party's argument that the clear regulatory language should be disregarded by applying a liberal construction to a clear regulatory requirement.
Here, as in Skyvue Terrace, we decline to apply the liberal construction provision set forth in 1 Pa.Code § 31.2 in a manner that would obviate the clear regulatory requirement in Section 17.13(b) of the PLCB's regulation that requires the filing of petitions to intervene within 30 days of the posting of the notice of application and allows untimely petitions only for good cause shown.[9]
In short, we discern no abuse of discretion to deny the untimely joint motion for intervention filed by MBDA and Lackawanna.[10] Because we conclude the PLCB *1199 properly denied MBDA and Lackawanna standing to intervene, we need not reach the merits of MBDA and Lackawanna's assertions that the PLCB erred in approving Wegmans' application for the double transfer of Restaurant Liquor License No. R-14953.[11]
Judge McGINLEY did not participate in the decision in this case.

ORDER
AND NOW, this 2nd day of March, 2009, the order of the Pennsylvania Liquor Control Board is AFFIRMED.
NOTES
[1] The decision in this case was reached before January 1, 2009, when Judge Friedman assumed the status of senior judge.
[2] Act of April 12, 1951, P.L. 90, as amended, 47 P.S. § 4-493(14).
[3] Wegmans also filed license transfer applications for its Bethlehem, Williamsport, State College, Wilkes-Barre and Easton locations. Within a six-week period, a PLCB hearing examiner conducted individual hearings for each of the various locations. At each hearing the parties presented testimony that was generally applicable to the issues surrounding Wegmans' applications. The parties proceeded before the PLCB hearing examiner by creating a single record applicable to all stores or any single store. However, the PLCB issued separate opinions for each individual location due to some site specific issues as well as specific geographic intervenors.
[4] Additionally, MBDA and various distributors filed petitions for review from PLCB orders approving Wegmans' license transfer applications for its stores in Williamsport (513 C.D.2008), Easton (514 C.D.2008), Wilkes-Barre (515 C.D.2008), State College (516 C.D. 2008) and Bethlehem (517 C.D.2008). Those matters were argued seriately with this case. Like the PLCB, we issue separate opinions for each transfer application.
[5] Wegmans also presented the testimony of its Regional Loss Prevention Manager, Carl Phillips, who testified concerning the safeguards and policies Wegmans would implement in connection with its proposed sale of beer.
[6] Additionally, after MBDA and Lackawanna filed their petition for review with this Court, they filed a motion asking this Court to stay beer sales by Wegmans. Ultimately, a single judge of this Court quashed the motion filed by MBDA and Lackawanna.
[7] Our review of a decision of the PLCB as an administrative agency is limited to determining whether there was a constitutional violation or an error of law, whether the practices and procedures of the PLCB were followed and whether necessary findings of fact were supported by substantial evidence in the record. Malt Beverage Distribs. Ass'n v. Pa. Liquor Control Bd., 881 A.2d 37 (Pa.Cmwlth. 2005), appeal denied, 586 Pa. 775, 895 A.2d 1264 (2006).
[8] Sections 15.2 and 17.2 of the PLCB's regulations, 40 Pa.Code § 15.2, 17.2, contain similar language and are intended to supplement 1 Pa.Code § 31.2.
[9] MBDA and Lackawanna also maintain, if this Court rules in their favor in the companion cases in which Wegmans sought licenses for its other locations, the rulings should apply to all the Wegmans' cases. To that end, MBDA and Lackawanna assert Wegmans should not be permitted to sell beer only at its Dickson City location merely because MBDA and Lackawanna did not timely petition to intervene in this one case.

In the companion cases, we determined the PLCB properly granted Wegmans' license transfer applications. Based on our resolution of those cases, we need not address the argument of MBDA and Lackawanna that a ruling in their favor in those cases should apply uniformly to all Wegmans' locations at issue in these appeals.
[10] Nevertheless, we decline Wegmans' invitation to quash the petition for review to this Court filed by MBDA and Lackawanna. To that end, we note, Section 702 of the Administrative Agency Law states: "Any person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals...." 2 Pa.C.S. § 702 (emphasis added). Further, as our Supreme Court explained:

[B]y virtue of Section 702 of the Administrative Agency Law, neither party status nor traditional aggrievement is necessary to challenge actions of an administrative agency. Rather, standing to appeal administrative decisions extends to "persons," including non-parties who have a "direct interest" in the subject matter, as distinguished from a "direct, immediate, and substantial" interest. A direct interest requires a showing that the matter complained of caused harm to the person's interest....
Citizens Against Gambling Subsidies, Inc. v. Pa. Gaming Control Bd., 591 Pa. 312, 319, 916 A.2d 624, 628 (2007) (emphasis added).
A party may show a direct interest if an agency determination in favor of a competitor "cause[s] harm to a financial interest of his." MEC Pa. Racing, Inc. v. Pa. State Horse Racing Comm'n, 827 A.2d 580, 588 (Pa.Cmwlth. 2003). Financial or pecuniary harm is sufficient to confer competitor standing. 20 G. Ronald Darlington, et al., Pennsylvania Appellate Practice, § 501:8 (2008-09 ed.) (citing Application of El Rancho Grande, Inc., 496 Pa. 496, 437 A.2d 1150 (1981)); MEC Pa. Racing; Pa. Auto. Ass'n v. State Bd. of Vehicle Mfrs., Dealers & Salespersons, 121 Pa.Cmwlth. 352, 550 A.2d 1041 (1988).
Further, in Capital BlueCross v. Pa. Ins. Dep't, 937 A.2d 552, 588 (Pa.Cmwlth.2007) (en banc), appeal denied, ___ Pa. ___, 963 A.2d 906 (2009), we stated:
In El Rancho Grande, the competitors did not formally intervene, but they participated in administrative hearings. Indeed, the record showed one or more of the competitors would be driven out of business if the additional license was granted.
In Pennsylvania Automotive Association, the petitioner, an association representing car dealers and asserting competitor standing to appeal participated in the agency proceedings and presented evidence of financial harm to car dealers flowing from the agency action.
As indicated by these cases, persons asserting a direct interest in the agency action based on financial harm for purposes of an appeal under 2 Pa.C.S. § 702 must assert such a claim at the agency level and offer proof of harm. See also [Pa. Ass'n of Indep. Ins. Agents v. Foster, 150 Pa.Cmwlth. 572, 616 A.2d 100 (1992)]....
Here, although MBDA and Lackawanna failed to achieve intervenor status below, they participated in the PLCB proceedings and offered proof of financial harm resulting from Wegmans' requested restaurant liquor license. Specifically, they offered the testimony of Hogan and Lynch that the retail sale of beer by Wegmans would financially harm nearby beer distributors. As such, we believe, MBDA and Lackawanna demonstrated a sufficiently direct interest so as to justify standing to appeal the PLCB's decision. Therefore, we will not quash the petition for review filed by MBDA and Lackawanna.
[11] Even if we reached the merits of these assertions, we would affirm the PLCB's decision here. To that end, in the companion case of Malt Beverage Distributors Ass'n & Tanczos Beverages, Inc. v. Pennsylvania Liquor Control Board (Bethlehem Wegmans), 965 A.2d 1254 (Pa. Cmwlth, No. 517 C.D. 2008, filed February 23, 2009), we rejected MBDA's assertions that the PLCB erred in granting Wegmans' application for the transfer of a restaurant liquor license to its Bethlehem location. First, we pointed out that MBDA did not dispute that Wegmans' Market Café satisfied the statutory "restaurant" definition set forth in Section 102 of the Liquor Code, 47 P.S. § 1-102. Next, we stated the PLCB did not err in its interpretation of the PLCB regulations governing interior connections between licensed premises and other businesses. See 40 Pa.Code §§ 3.52-3.54. In addition, we determined the PLCB properly applied these regulations to the facts presented concerning Wegmans' proposed operation of its licensed restaurant and the unlicensed grocery store. Finally, we determined the authority cited by MBDA, Sheetz II, and Pennsylvania Liquor Control Board v. Ripley, 107 Pa.Cmwlth. 425, 529 A.2d 39 (1987), did not compel the conclusion that the PLCB erred in granting Wegmans' application for a restaurant liquor license for its Bethlehem location with the proposed interior connection between the licensed restaurant and the unlicensed grocery store. Consequently, we held the PLCB properly approved Wegmans' license transfer application.

Based on our decision in Bethlehem Wegmans, we would affirm the order of the PLCB granting Wegmans' request for the double transfer of Restaurant Liquor License R-14953 for its Dickson City location.