# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clean Air Council, The Delaware : 
Riverkeeper Network, and : 
Mountain Watershed Association, Inc., : 
 : 
                       Petitioners : 
 : 
           v. : No. 309 C.D. 2019
 : 
Commonwealth of Pennsylvania, : 
Department of Environmental : 
Protection, : 
 : 
                      Respondent : 

Department of Environmental : 
Protection, : 
 : 
                       Petitioner : 
 : 
           v. : No. 313 C.D. 2019
 : Argued:  June 10, 2020
Clean Air Council, The Delaware : 
Riverkeeper Network, Mountain : 
Watershed Association, Inc. : 
and Sunoco Pipeline, L.P., : 
 : 
                    Respondents : 


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge[1]
                  HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE P. KEVIN BROBSON, Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE ELLEN CEISLER, Judge

---

[1] This case was assigned to the opinion writer before Judge Brobson succeeded Judge Leavitt as President Judge.

OPINION BY JUDGE WOJCIK                    FILED:  February 16, 2021

In these consolidated appeals, the Clean Air Council, The Delaware Riverkeeper Network, and Mountain Watershed Association, Inc. (collectively, Objectors), and the Department of Environmental Protection (DEP), petition for review of the orders of the Environmental Hearing Board (EHB) denying the fee applications of Objectors and Sunoco Pipeline, L.P. (Sunoco) filed pursuant to the provisions of The Clean Streams Law.[2]  Also before the Court is Sunoco's Application to Quash DEP's appeal.  We grant the Application to Quash, quash DEP's appeal, and affirm EHB's order.

On February 13, 2017, DEP granted a total of 20 permits to Sunoco, 3 for erosion and sediment control[3] and 17 for water obstruction and encroachment,[4]

---

[2] Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§691.1-691.1001.

[3] These are referred to as "Chapter 102" permits, granted under the provisions of Chapter 102 of DEP's regulations, 25 Pa. Code §§102.1-102.51.  *See, e.g.*, *Becker v. Department of Environmental Protection* (Pa. Cmwlth., No. 560 C.D. 2017, filed December 1, 2017), slip op. at 15 ("Under The Clean Streams Law and its regulations promulgated at Chapter 102 of Title 25 of the Pennsylvania Code, [DEP] has the authority to issue orders to prevent the pollution of waters of the Commonwealth, which are defined very broadly to include . . . 'any and all rivers, streams . . . or parts thereof.'  Section 1 of The Clean Streams Law, 35 P.S. §691.1[.]"); *Delaware County Community College v. Fox*, 342 A.2d 468, 479-80 (Pa. Cmwlth. 1975) (holding that DEP's regulations in Chapter 102 of the Pennsylvania Code, relating to erosion and sedimentation control, provide protection against secondary polluting effects should they become imminent).

[4] These are referred to as "Chapter 105" permits, granted under the provisions of Chapter 105 of DEP's regulations, 25 Pa. Code §§105.1-105.64.  As we have previously explained:

The [Dam Safety and Encroachments Act (DSEA), Act of November 26, 1978, P.L. 1375, *as amended*, 32 P.S. §§693.1-693.27], similar to The Clean Streams Law, provides [DEP's] statutory authority for Chapter 105 regulations governing water obstructions and encroachments, the scope of which is broadly

**(Footnote continued on next page…)**

2

which Sunoco had sought relating to its plan to construct the Pennsylvania Pipeline Project also known as the Mariner East 2 natural gas pipeline. EHB Op. at 2. This decision was appealed to the EHB on February 14, 2017, by the Organizations, *id.*, which led to a series of additional appeals, filings, and negotiations resulting in a settlement agreement between Objectors and the DEP, which stated that it

> generally provides for the development or revision of [DEP] policies and procedures relating to future natural gas pipelines in consideration for [Objectors] withdrawing their appeal. The settlement provides for the establishment of a stakeholder group on pipeline construction, and for the online availability of pipeline permit applications and review documents. No part of the settlement altered any of the 20 permits under appeal, [a February 8, 2018 consent order and agreement between DEP and Sunoco], or the various other stipulated orders entered into by all the parties. [Objectors] received $27,500 in reimbursement of costs and attorney's fees from [DEP] in the settlement and

---

**(continued…)**

> delineated to include "[a]ll water obstructions and encroachments . . . located in, along, across or projecting into **any watercourse**, floodway or body of water, whether temporary or permanent." Section 4 of the DSEA, 32 P.S. §693.4 (emphasis added).

*Becker*, slip op. at 16. *See also* Section 105.15(b) of DEP's regulations, 25 Pa. Code §105.15(b) ("For structures or activities where water quality certification is required under section 401 of the Clean Water Act (33 U.S.C.A. §1341), an applicant . . . shall prepare and submit to [DEP] for review, an environmental assessment containing the information required by subsection (a) for every dam, water obstruction or encroachment located in, along, across or projecting into the regulated water of this Commonwealth."); *Solebury Township v. Department of Environmental Protection*, 928 A.2d 990, 999 (Pa. 2007) ("[W]e conclude that, at least under the circumstances presented in this case, challenges to The Clean Streams Law aspects of the issuance of Section 401 Certifications are 'proceedings pursuant to this act' for purposes of the fee-shifting provisions of Section 307 [of The Clean Streams Law].").

agreed not to seek further reimbursement for fees and costs from [DEP].

*Id.* at 4. Sunoco was not a party to this settlement agreement. *Id.*

Objectors then filed an application for costs and fees with EHB, seeking to recover $228,246 from Sunoco for Objectors' efforts relating to certain segments of their EHB appeal and the costs incurred in the fee application process itself. EHB Op. at 5-6. Sunoco responded with an application of its own, requesting $298,906.12 in costs and fees from Objectors, in order to partially cover the expenses Sunoco had incurred by defending against the EHB appeal, as well as any costs and fees resulting from the fee application process. *Id.* at 6.

On February 19, 2019, in a divided opinion, EHB denied both applications. Noting that Section 307(b) of The Clean Streams Law[5] affords wide latitude to award costs and fees, the EHB majority stated that it applies a three-step process when a party seeks such compensation from DEP: "(1) [EHB determines] whether the fees have been incurred in a proceeding pursuant to The Clean Streams Law; (2) [EHB then determines] whether the applicant has satisfied the threshold criteria for an award; and (3) if those two prongs are satisfied, [EHB] then determine[s] the amount of the award." EHB Op. at 7.

However, the majority highlighted that different goals and responsibilities were involved in this matter, as the applications under consideration sought costs and fees from private parties, rather than from Commonwealth entities. EHB Op. at 7-8. The majority stated that "the standard

---

[5] 35 P.S. §691.307(b). Section 307(b) states, in relevant part: "The [EHB], upon the request of any party, may in its discretion order the payment of costs and attorney's fees it determines to have been reasonably incurred by such party in proceedings pursuant to [The Clean Streams Law]."

4

for awarding fees against any private party need not be concomitant with the standard for fees against [DEP]." *Id.* at 8.

Accordingly, the majority held that it should impose a more stringent test, in which a private party could be liable for such costs and fees only if EHB found that the private party "engaged in dilatory, obdurate, vexatious, or bad faith conduct in the course of prosecuting or defending [an] appeal[ to the EHB.]" EHB Op. at 10. The majority reasoned that this would protect permittees' rights to due process in the context of a third-party appeal and would not result in permittees being "dissuaded from vigorously protecting their interests in those proceedings in good faith." *Id.* at 9.

In support of this conclusion, the majority cited and discussed the Pennsylvania Supreme Court's opinion in *Lucchino v. Department of Environmental Protection*, 809 A.2d 264 (Pa. 2002), which affirmed EHB's use of a bad faith standard in determining whether to impose an award of costs and fees against a private individual. EHB Op. at 9-10.[6] Furthermore, the majority reasoned that, "[f]or purposes of the instant appeal, no other credible, workable alternative to the bad faith standard has been proposed." *Id.* at 10. Applying this standard to the facts herein, the majority found that neither Objectors, nor Sunoco, had operated in bad faith during the course of Objectors' appeal and, on that basis, denied their respective fee applications. *Id.* at 11-17.

In contrast, although the EHB minority agreed that neither Objectors nor Sunoco was entitled to attorney's fees under the circumstances, the minority

_____

[6] In *Lucchino*, the Supreme Court noted that EHB determined that the objector in that case had used the administrative appeal process in bad faith, to do nothing more than harass DEP and the affected permittee. 809 A.2d at 269.

disputed the propriety of using the bad faith test to evaluate such fee applications. EHB Op. at 19. The minority stated that there is no legal basis for applying a bad faith standard, nor for using different tests depending upon whether the application is lodged against a government entity or a private party. *Id.* at 19-21.

Rather, the minority maintained that Section 307(b) of The Clean Streams Law clearly and unambiguously establishes a uniform standard that permits EHB, upon request, to assess costs and fees at its discretion, without any need for a finding of bad faith. EHB Op. at 20. The minority distinguished *Lucchino* from this matter, arguing that while it read *Lucchino* as requiring the EHB to apply a bad faith standard when considering a fee application lodged against a third-party appellant, no such mandate exists for those directed towards permittees. *Id.* at 21.

In addition, the minority did not "believe that allowing attorney's fee awards against permittees [would] have a 'chilling effect' on permit applicants." EHB Op. at 21. The minority explained that this was so because the interests at play are different for permit applicants compared to likely third-party appellants, such as Objectors herein, who might otherwise be discouraged from making their voice heard if an appeal mounted in good faith could nonetheless result in a hefty financial penalty. *Id.* Furthermore, the minority noted that Section 307(b)'s fee-shifting provision is to be liberally construed. The minority determined that, given a permittee's role in the permitting process and any resultant appeals, "if the law mandates an award of attorney's fees under The Clean Streams Law [to the appellant], . . . a permittee should shoulder at least some of its rightful responsibility." *Id.* at 21-25.

6

Both Objectors and DEP separately appealed EHB's decision to this Court, and the appeals were consolidated. Subsequently, Sunoco intervened in the appeals and filed the Application to Quash seeking to quash DEP's appeal, arguing that DEP does not have standing to appeal the EHB's fee application decision. Application to Quash ¶¶1-5.

## I.

Preliminarily, with respect to the Application to Quash, we note that DEP submitted a brief to EHB regarding permittee liability under Section 307(b) of The Clean Streams Law, and participated in oral argument before EHB. *See* DEP's Answer to Application ¶¶12-18. It appears that this was done with the assent of both Objectors and Sunoco. *Id.* However, the record of this case does not show that DEP ever formally sought intervention in the attorney's fee and cost application proceedings. *See* Section 4(e) of the Environmental Hearing Board Act[7] ("Intervention.--Any interested party may intervene in any matter pending before [EHB].").

---

[7] Act of July 13, 1988, P.L. 530, 35 P.S. §7514(e). Regarding the application of Section 4(e), we have stated:

> [I]n the context of intervention, the phrase "any interested party" actually means any person or entity interested, *i.e.*, concerned, in the proceedings before [EHB]. The interest required, of course, must be more than a general interest in the proceedings; it must be such that the person or entity seeking intervention will either gain or lose by direct operation of [EHB]'s ultimate determination. *See* Black's Law Dictionary 730 (5th ed. 1979); *see also* [Section 101 of the Administrative Agency Law,] 2 Pa. C.S. §101[,] wherein a party is defined as "[a]ny person who appears in a proceeding before an agency who has a direct interest in the subject matter of such proceeding." To interpret this phrase any differently, under

**(Footnote continued on next page…)**

The traditional concept of standing "is rooted in the notion that for a party to maintain a challenge to an official order or action, he must be aggrieved in that his rights have been invaded or infringed." *Franklin Township v. Department of Environmental Resources*, 452 A.2d 718, 719 (Pa. 1982). "[A] party who is not negatively affected by the matter he seeks to challenge is not aggrieved, and thus, has no right to obtain judicial resolution of his challenge." *City of Philadelphia v. Commonwealth*, 838 A.2d 566, 577 (Pa. 2003). To that end, an individual's standing in a matter is normally contingent upon their ability to articulate an interest that is substantial, direct, and immediate. *See, e.g.*, *Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009); *Department of Environmental Resources v. Jubelirer*, 614 A.2d 199, 203 (Pa. 1989); *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 280-83 (Pa. 1975).

However, the notion of traditional standing does not apply when dealing with appeals from administrative agencies. Our Supreme Court has held:

> [B]y virtue of Section 702 of the Administrative Agency Law, [2 Pa. C.S. §702,] neither party status nor traditional aggrievement is necessary to challenge actions of an administrative agency. Rather, standing to appeal administrative decisions extends to "persons," including non-parties, who have a "direct interest" in the subject

**(continued…)**

> these circumstances, would lead to an absurd and unreasonable result as well as render the [Environmental Hearing Board] Act's intervention provision ineffective; presumably, neither of which the legislature intended here. Section 1922(1), (2) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1922(1), (2).

*Browning-Ferris, Inc. v. Department of Environmental Resources*, 598 A.2d 1057, 1060-61 (Pa. Cmwlth. 1991).

8

matter, as distinguished from a "direct, immediate, and substantial" interest. [*Application of El Rancho Grande, Inc.*, 437 A.2d 1150, 1152 (Pa. 1981)] (quoting 2 Pa. C.S. §702). A direct interest requires a showing that the matter complained of caused harm to the person's interest. *South Whitehall Township Police Service v. South Whitehall Township*, [555 A.2d 793, 795 (Pa. 1989)]. Although not the full equivalent of "direct, immediate, and substantial," the direct interest requirement retains the function of differentiating material interests that are discrete to some person or limited class of persons from more diffuse ones that are common among the citizenry.

*Citizens Against Gambling Subsidies, Inc. v. Pennsylvania Gaming Control Board*, 916 A.2d 624, 628 (Pa. 2007) (*Citizens*).

Nevertheless, this relaxed test for standing does not excuse a party from formally intervening at the administrative level. Mere participation, even rising to the level of filing a brief or engaging in oral argument before an administrative agency, is not enough to confer standing to a party in the absence of formal, approved intervention. As the Pennsylvania Supreme Court has observed:

This conclusion is in accord with our finding in *Citizens* that permitting an appeal absent intervention in the proceedings before the [Pennsylvania Gaming Control] Board is "inconsistent with orderly rules of procedure and would foster untenable impracticalities in terms of the development of an essential record for consideration on appeal." 916 A.2d at 629. . . .

Further, [p]etitioners' attempt to distinguish *Citizens* on the ground that the petitioners there chose not to intervene is unpersuasive. The salient fact in *Citizens* was simply that the petitioners did not intervene when they had the opportunity to do so. Moreover, the fact that [p]etitioners participated at the hearing without intervening does not afford them standing. *See Stanbro v. Zoning Hearing Board of Cranberry Township*, [566 A.2d 1285, 1287 (Pa. Cmwlth. 1989)] (holding that

9

participation at the trial court level by filing a brief and participating in oral argument without intervention is insufficient to be accorded standing to appeal).

*Society Hill Civic Association v. Pennsylvania Gaming Control Board*, 928 A.2d 175, 183 (Pa. 2007) (footnote and emphasis omitted). Therefore, because DEP did not formally intervene before EHB, DEP does not have standing under the Administrative Agency Law to appeal EHB's decision denying Objectors' Application.

As a result, the only basis upon which DEP could possess standing in this matter would be pursuant to its statutory powers. In *Pennsylvania Game Commission v. Department of Environmental Resources*, 555 A.2d 812, 815 (Pa. 1989) (citation omitted), our Supreme Court discussed the nature of how an agency may possess legislatively established standing:

> Although our law of standing is generally articulated in terms of whether a would-be litigant has a "substantial interest" in the controverted matter, and whether he has been "aggrieved" or "adversely affected" by the action in question, we must remain mindful that the purpose of the "standing" requirement is to insure that a legal challenge is by a proper party. . . . The terms "substantial interest," "aggrieved[,]" and "adversely affected" are the general, usual guides in that regard, but they are not the only ones. For example, when the legislature statutorily invests an agency with certain functions, duties and responsibilities, the agency has a legislatively conferred interest in such matters. From this it must follow that, unless the legislature has provided otherwise, such an agency has an implicit power to be a litigant in matters touching upon its concerns. In such circumstances the legislature has implicitly ordained that such an agency is a proper party litigant, *i.e.*, that it has "standing."

10

In that case, the Supreme Court considered the Pennsylvania Game Commission's statutory authority under the Game and Wildlife Code,[8] and concluded that it "has a substantial interest in the lands and wildlife under its control. This alone would be sufficient to give it standing to legally challenge any action which allegedly would have an adverse impact on those interests." 555 A.2d at 816. In addition, the Supreme Court noted that a specific provision of the Dam Safety and Encroachments Act (DSEA) "expressly gives the Commission the power to enforce th[at statute] where a violation of it would adversely impact upon the property under the Commission's control." *Id.* On this alternate basis, the Supreme Court "conclude[d] that the Commission had standing to raise the DSEA in its challenge to [the Department of Environmental Resources'[9]] issuance of [a] solid waste permit in this case." *Id.*

The General Assembly has expressly conferred upon DEP the authority to enforce The Clean Streams Law. *See* Section 1901-A(20) of The Administrative Code of 1929[10] ("The Department of Environmental Resources shall . . . continue to exercise the powers and perform the duties by law heretofore vested in and imposed upon . . . [t]he Department of Health by the act . . . known as 'The Clean Streams Law[.]'"). Specifically, under Section 5(5) of The Clean Streams Law, DEP has the power to "[r]eview and take appropriate action on all

---

[8] 34 Pa. C.S. §§101-2965.

[9] DEP was formerly named the Department of Environmental Resources. *Adams Sanitation Co. v. Pennsylvania Department of Environmental Protection*, 683 A.2d 981, 982 n.1 (Pa. Cmwlth. 1996), *aff'd on other grounds*, 715 A.2d 390 (Pa. 1998).

[10] Act of April 9, 1929, P.L. 177, *as amended*, added by Act of December 3, 1970, P.L. 834, 71 P.S. §510-1(20).

11

permit applications submitted pursuant to the provisions of [The Clean Streams Law] and to issue, modify, suspend, limit, renew or revoke permits pursuant to [The Clean Streams Law] and to the rules and regulations of the [DEP]." 35 P.S. §691.5(5).

However, as noted above, DEP's interest herein is merely prospective, based on its concern that EHB's decision in this matter will enshrine the bad faith standard as the appropriate standard to be applied in all similar costs and fees application cases in the future. *See, e.g.*, DEP's Answer to Application ¶24 ("EHB's decision establishes precedent to be applied in future fees litigation under Section 307(b). Given the substantial impact the EHB's decision will have on attorney's fees litigation, [DEP] has an immediate need to determine the proper standard to apply.").

The competing fee applications herein were filed by, and directly affected, only Objectors and Sunoco; regardless of EHB's decision, there was no possibility that EHB would have imposed additional costs and fees on DEP in addition to those that it already agreed to as part of its settlement agreement with Objectors. Thus, neither the traditional concept of standing, nor the legislatively established standing outlined above, is broad enough to encompass a challenge rooted solely in the potential, prospective effects of the disposition of a fee application under The Clean Streams Law between private parties where, as here, DEP's authority or actions under The Clean Streams Law or the award of costs and fees against DEP thereunder are not implicated. Accordingly, the Application to Quash is granted and DEP's appeal is quashed.

## II.

Turning to the merits of Objectors' appeal, Objectors first note that the standard for determining whether to award costs and fees to a party where a matter has been resolved without a decision on the merits is the "catalyst test," in which:

> (1) the applicant must show that the opposing party provided some of the benefit the fee-requesting party sought in the underlying suit, (2) the applicant must show that the suit stated a genuine claim, and (3) the applicant must show that the suit was a substantial or significant reason why the opposing party, voluntarily or otherwise, provided the benefit or partial benefit that the fee requesting party sought in the underlying suit.

Objectors' Brief at 9-10 (quoting *Upper Gwynedd Towamencin Municipal Authority v. Department of Environmental Protection*, 9 A.3d 255, 264-65 (Pa. Cmwlth. 2010)). Objectors argue that bad faith is not the only "workable" standard for this type of scenario, and that EHB erred by not using the catalyst test to evaluate the Organizations' fee application. *Id.* at 10-13. Moreover, Objectors state that EHB's use of the bad faith standard is, under the circumstances, not supported by the plain language of Section 307(b) of The Clean Streams Law, case law, or public policy considerations. *Id.* at 14-15, 20-24. Contrary to EHB's interpretation, Section 307(b) should be construed as neither requiring third-party appellants to prove bad faith conduct to recover costs and fees, nor mandating that EHB should review DEP's and permittees' actions using different standards when considering a fee application. *Id.* at 16-20.

Objectors then argue that the EHB majority misinterpreted *Lucchino*, asserting that "[t]he question *Lucchino* resolved was not whether bad faith was the right standard, but whether fees could be awarded against an appellant at all," and

13

that "[EHB] misunderstands the holding in *Lucchino*, which did not require or set a new standard but merely affirmed a fee award against an appellant." Objectors' Brief at 25. According to Objectors, the EHB majority's concerns about permittees' due process rights was entirely misplaced, especially because *Lucchino* did not mention due process concerns. Objectors' Brief at 26. Furthermore, Objectors point out that

> [t]he ["]chilling effect["] the [*Lucchino*] Court . . . was primarily concerned about is one that would disincentivize bringing meritorious appeals, not defending against them. 809 A.2d at 270. Permittees, being the beneficiary of the permit, will always have an interest in defending the permit. *Lucchino* also concerns guarding against frivolous suits, *id.*, but that is not an issue here.

*Id.*

In contrast, Sunoco asserts that EHB appropriately exercised its discretion in electing to apply a bad faith standard in evaluating the fee applications, rather than the catalyst test, arguing that this decision was supported by both case and statutory law. Sunoco's Brief at 17-36. In addition, Sunoco highlights its lack of involvement in the settlement between DEP and Objectors, through which DEP agreed to revise its permit review process and which effected no changes upon Sunoco's aforementioned permits. *Id.* at 34-35.

Also, according to Sunoco, a bad faith standard is warranted for several reasons related to public policy considerations. First, it is DEP's statutory responsibility to enforce The Clean Streams Law. Sunoco's Brief at 38-39. Second, on appeal, EHB reviews DEP's actions, rather than those of the permittee. *Id.* at 39-40. Third, the catalyst test is fact-intensive and difficult to consistently apply. *Id* at 40-41. Sunoco contends that using the catalyst test in this kind of

14

scenario would result in a greatly increased workload for EHB and would discourage settlements. *Id.* at 41-44. Sunoco claims that the catalyst test would be especially inappropriate for use here, because the complexity of this matter would require the EHB to conduct a lengthy and involved inquiry to determine the reasons for each of the actions taken and decisions made by the parties. *Id.* at 44-46.

Initially, as this Court has explained:

> Our review of EHB determinations under Section 307(b) of The Clean Streams Law is limited to determining whether the EHB abused its discretion. *Solebury Township v. Department of Environmental Protection*, [928 A.2d 990, 997 n.8 (Pa. 2007)]. In *Kwalwasser* [*v. Department of Environmental Resources*, 569 A.2d 422, 424 (Pa. Cmwlth. 1990),[11]] we noted that our disagreement with the EHB's reasoning or result is

---

[11] As the Pennsylvania Supreme Court has explained:

> In cases involving both Section 307 and Section 4(b) [of the Surface Mining Conservation and Reclamation Act, Act of May 31, 1945, P.L. 1198, *as amended*, 52 P.S. §1396.4(b), *superseded*, 27 Pa. C.S. §7708,] the EHB explained that, to determine whether an award of attorneys' fees is appropriate, courts have applied an analysis that has become known as the *Kwalwasser* test, according to which "(1) a final order must have been issued; (2) the applicant for the fees and expenses must be the prevailing party; (3) the applicant must have achieved some degree of success on the merits; and (4) the applicant must have made a substantial contribution to a full and final determination of the issues." *Big B. Mining Co. v. Department of Environmental Resources*, [624 A.2d 713, 715 (Pa. Cmwlth. 1993)] (citing [*Kwalwasser*]). The EHB determined that it was appropriate to apply this test to the present matter, as, in its view, there was no reason to apply different criteria for petitions solely under Section 307.

*Solebury Township*, 928 A.2d at 995.

15

> not sufficient ground to overturn the EHB's decision. We may not substitute our judgment for that of the EHB. [*Id.*] Rather, "[a]n abuse of discretion occurs if, in reaching a conclusion, the law is overridden or misapplied or the judgment exercised is manifestly unreasonable or is the result of partiality, prejudice, bias, or ill will." *Luzerne County Children & Youth Services v. Department of Human Services*, 203 A.3d 396, 398 (Pa. Cmwlth. 2019).

*Sierra Club v. Department of Environmental Protection*, 211 A.3d 919, 924-25 (Pa. Cmwlth. 2019).

As indicated above, in disposing of the request for costs and fees, the EHB majority relied upon *Lucchino*, in which the Supreme Court affirmed EHB's use of a bad faith standard in determining whether to impose an award of costs and fees against a private individual objector. The Court stated, in relevant part:

> Although the EHB recognized that a citizen has a right to challenge agency actions that conflict with the law and directly affect the citizen, it properly found that the appeal here was an abuse of the administrative adjudicatory system because it did not challenge the [DEP]'s action, but was merely an attack on agency employees and officials. Where, as here, the record supports a tribunal's finding of fact that the conduct of the party was dilatory, obdurate, vexatious, or in bad faith, this Court will not disturb an award of counsel fees in the absence of an abuse of discretion. *Township of South Strabane v. Piecknick*, [686 A.2d 1297 (Pa. 1996)] (awarding counsel fees appropriate if record supports finding of fact that the conduct of the party was dilatory, obdurate, or vexatious). We find no abuse of discretion in this instance and an award of counsel fees is appropriate. We do not reach this decision lightly for, as [the objector] reminds us, any grant of attorney's fees against an individual litigant in a suit against his government has a potential "chilling effect" on the willingness of the ordinary citizen to pursue resolution of his disputes in the courts. However, recognizing that we must strike a delicate balance, it is equally important that

16

this phrase not be employed to defeat the protections against frivolous suits afforded to a defendant.

809 A.2d at 269 (footnotes omitted).

Additionally, in *Solebury Township*, two townships sought review of EHB's order denying their request for costs and fees from DEP and the Department of Transportation (PennDOT), as a governmental permittee, in which EHB employed the catalyst test. EHB determined that the townships did not prevail in the matter as required by that test because DEP had rescinded the contested Section 401 Certifications under The Clean Water Act on PennDOT's request, and the case was ultimately dismissed as moot. In remanding the matter, the Court stated:

> [G]iven Pennsylvania's strong policy to justly compensate parties who challenge agency actions by liberally interpreting fee-shifting provisions, *see Lucchino*, [809 A.2d at 269], we agree with the [t]ownships that the EHB's narrow application of the *Kwalwasser* criteria in the present matter was erroneous.
>
> More specifically, the broad grant of discretion to the EHB in awarding attorney's fees under Section 307 renders [EHB's and PennDOT's] argument that a formal judgment is necessary to a finding that a party has prevailed with some degree of success on the merits untenable. Instead, we agree with the Commonwealth Court that the practical relief sought by the [t]ownships should be considered when characterizing them as prevailing parties for purposes of the *Kwalwasser* test. *Accord Buckhannon* [*Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 633 (2001)] (Ginsburg, J., dissenting) ("[W]here the ultimate goal is not an arbiter's approval, but a favorable alteration of actual circumstances, a formal declaration is not essential."). In addition, the EHB's exclusive focus on the dismissal of the case as moot, without conducting a hearing or making further factual findings and legal conclusions, does not justify its

17

holding that the [t]ownships did not achieve some degree of success on the merits and did not make a substantial contribution to the full and final determination of the issues.

Finally, as *Lucchino* makes clear, the EHB may, in its discretion, award attorney's fees under Section 307 solely on the basis of a finding of bad faith or vexatious conduct, which is supported by the record, without reference to the *Kwalwasser* criteria. *See Lucchino*, [809 A.2d at 269-70]. In this regard, however, we agree with [EHB and PennDOT] that the Commonwealth Court erred by characterizing [their] conduct as vexatious on the undeveloped record before it. . . .

Since we conclude that the EHB's application of the *Kwalwasser* criteria in the present matter was too narrow in view of the broad language of Section 307 and the public policy favoring liberal construction of fee-shifting provisions, we cannot determine the propriety of the EHB's denial of the [t]ownships' motion for attorney's fees under Section 307 on the present record. Accordingly, the order of the Commonwealth Court is vacated, and the matter is remanded to the EHB for further proceedings consistent with the above.

928 A.2d at 1004-05.

Based on the foregoing Supreme Court analyses, and contrary to Objectors' assertions, the catalyst test is not the sole and exclusive standard that EHB may employ in disposing of a request for costs and fees against a permittee under Section 307(b) of The Clean Streams Law. Indeed, we have specifically recognized that EHB's "broad discretion includes the authority to adopt standards by which [it] will evaluate applications for costs and fees." *Sierra Club*, 211 A.3d at 926. In the instant case, it was entirely within EHB's discretion, and eminently appropriate, to apply the instant bad faith standard in deciding whether or not to impose costs and fees upon a private party permittee. In sum, "our disagreement

18

with the EHB's reasoning or result is not sufficient ground to overturn the EHB's decision," and "[w]e may not substitute our judgment for that of the EHB" in this regard. *Id.* (citing *Kwalwasser*).

Accordingly, we grant Sunoco's Application to Quash DEP's appeal; we quash DEP's appeal; and we affirm EHB's order.


_____
MICHAEL H. WOJCIK, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clean Air Council, The Delaware :
Riverkeeper Network, and :
Mountain Watershed Association, Inc., :
:
Petitioners :
:
v. : No. 309 C.D. 2019
:
Commonwealth of Pennsylvania, :
Department of Environmental :
Protection, :
:
Respondent :

Department of Environmental :
Protection, :
:
Petitioner :
:
v. : No. 313 C.D. 2019
:
Clean Air Council, The Delaware :
Riverkeeper Network, Mountain :
Watershed Association, Inc. :
and Sunoco Pipeline, L.P., :
:
Respondents :

# **O R D E R**

AND NOW, this 16th day of February, 2021, Sunoco Pipeline, L.P.'s Motion to Quash is GRANTED; the Department of Environmental Protection's above-captioned appeal is QUASHED; and the order of the Commonwealth of Pennsylvania, Department of Environmental Protection is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clean Air Council, The Delaware : 
Riverkeeper Network, and Mountain : 
Watershed Association, Inc., : 
                Petitioners : 
       : 
       : 
      v. : No. 309 C.D. 2019
       : 
Commonwealth of Pennsylvania, : 
Department of Environmental : 
Protection, : 
              Respondent : 
       : 
Department of Environmental : 
Protection, : 
              Petitioner : 
       : 
      v. : No. 313 C.D. 2019
       : Argued: June 10, 2020
Clean Air Council, The Delaware : 
Riverkeeper Network, Mountain : 
Watershed Association, Inc. and : 
Sunoco Pipeline, L.P., : 
              Respondents : 


**BEFORE:**   **HONORABLE MARY HANNAH LEAVITT, President Judge**
            **HONORABLE RENÉE COHN JUBELIRER, Judge**
            **HONORABLE P. KEVIN BROBSON, Judge**
            **HONORABLE PATRICIA A. McCULLOUGH, Judge**
            **HONORABLE ANNE E. COVEY, Judge**
            **HONORABLE MICHAEL H. WOJCIK, Judge**
            **HONORABLE ELLEN CEISLER, Judge**


**CONCURRING OPINION**
**BY JUDGE BROBSON**            **FILED: February 16, 2021**


     I join in Part I of the majority opinion, dismissing the appeal of the

Department of Environmental Protection (DEP) for lack of standing. I concur in the

result of Part II, that being affirmance of the decision of the Environmental Hearing Board (EHB) to deny the request by the Clean Air Council, The Delaware Riverkeeper Network, and Mountain Watershed Association, Inc. (collectively, Objectors) for an order directing Sunoco Pipeline, L.P. (Sunoco) to pay the costs and fees that Objectors incurred in the administrative proceeding below.

I write separately for two reasons. First, I believe that *Amicus Curiae* the Pennsylvania Chamber of Business and Industry (Pa. Chamber) highlights a potential constitutional infirmity with respect to the fee-shifting provision at issue in this case—Section 307(b) of The Clean Streams Law.[1] In relevant part, Section 307(b) provides: "The [EHB], upon the request of any party, *may in its discretion* order the payment of costs and attorney's fees it determines to have been reasonably incurred by such party . . . ." 35 P.S. § 691.307(b) (emphasis added). There are no standards in this section or elsewhere to cabin the EHB's discretion. Without standards, Section 307(b) of The Clean Streams Law may run afoul of Article II, Section 1 of the Pennsylvania Constitution, which vests within the General Assembly the exclusive authority to make laws.[2]

Where, in the exercise of its legislative power, the General Assembly delegates discretion to an agency to administer a particular law, two fundamental limitations must be satisfied for the law to withstand constitutional scrutiny: "First, . . . the General Assembly must make 'the basic policy choices,' and[,] second, the legislation must include 'adequate standards which will guide and restrain the exercise of the delegated administrative functions.'" *Protz v. Workers'*

---

[1] Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. § 691.307(b).

[2] "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." Pa. Const. art. II, § 1.

PKB-2

*Comp. Appeal Bd. (Derry Area Sch. Dist.)*, 161 A.3d 827, 834 (Pa. 2017) (quoting *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Cmwlth.*, 877 A.2d 383, 418 (Pa. 2005)).  There is a substantial legal question as to whether either of these fundamental limitations are met with respect to the EHB's discretion to award fees under Section 307(b) of The Clean Streams Law.  Nonetheless, the majority appropriately avoids addressing the issue in this case for two reasons.  First, it is not among the issues presented to us by the parties on appeal.  Second, the issue would more appropriately be addressed in a challenge to an EHB award of fees under Section 307(b) of The Clean Streams Law.

Putting aside the utter lack of any statutory standards, we must still review the EHB's exercise of discretion for abuse.  *See Solebury Twp. v. Dep't of Env't Prot.*, 928 A.2d 990, 997 n.8 (Pa. 2007).  "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or *the judgment exercised is manifestly unreasonable*, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." *Commonwealth v. Spiewak*, 617 A.2d 696, 699 n.4 (Pa. 1992) (emphasis added). Here, the EHB adopted a "bad faith standard," concluding that fees against a permittee would only be warranted where the permittee engaged in offensive conduct in the course of defending its appeal before the EHB.  The majority holds that this bad faith standard was "eminently appropriate" in this case. (*Clean Air Council v. Dep't of Env't Prot.*, ___ A.3d ___, ___ (Pa. Cmwlth., Nos. 309 and 313 C.D. 2019, filed February 16, 2021), slip op. at 18.)  While I agree, as the EHB is operating without legislative guardrails, I see no reason why "bad faith" must be the only test.  I, therefore, cannot endorse it as such with

PKB-3

respect to the exercise of the EHB's discretion under Section 307(b) of The Clean Streams Law.

Rather, I would simply affirm the EHB's decision because there is absolutely no basis in the record upon which the EHB could have exercised its discretion below in such a way as to compel Sunoco to pay Objectors' legal fees under Section 307(b) of The Clean Streams Law. Sunoco was not a party to the settlement agreement between Objectors and DEP that essentially ended Objectors' appeals. Moreover, Sunoco gave up nothing in the settlement or otherwise. Sunoco kept its permits, unaltered, as if Objectors had not even filed their appeals with the EHB. Under such circumstances, it would be manifestly unreasonable to order Sunoco, or any permittee, to pay Objectors' attorney's fees. For this reason, I concur in the majority's decision to affirm the EHB's order.

 

 

P. KEVIN BROBSON, Judge

Judge Cohn Jubelirer joins in this concurring opinion.

Clean Air Council, The Delaware : 
Riverkeeper Network, and Mountain : 
Watershed Association, Inc., : 
          Petitioners : 
           : 
      v. : No. 309 C.D. 2019 
           : 
Commonwealth of Pennsylvania, : 
Department of Environmental : 
Protection, : 
          Respondent : 

Department of Environmental : 
Protection, : 
          Petitioner : 
           : 
      v. : No. 313 C.D. 2019 
           : 
Clean Air Council, The Delaware : 
Riverkeeper Network, Mountain : 
Watershed Association, Inc. and : 
Sunoco Pipeline, L.P., : 
          Respondents : ARGUED: June 10, 2020

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE ELLEN CEISLER, Judge

CONCURRING AND DISSENTING OPINION
BY JUDGE CEISLER                  FILED: February 16, 2021

      I join the majority with regard to its disposition of Sunoco Pipeline, L.P.'s (Sunoco) Application to Quash the Department of Environmental Protection's (DEP) appeal. However, I must part ways from the majority regarding its

affirmation, in full, of the Environmental Hearing Board's (EHB) February 19, 2019 decision. As our Court has previously held:

> Under Section 307(b) of The Clean Streams Law, [Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. § 691.307(b),] the EHB has broad discretion to award or deny attorneys' fees and costs in a particular proceeding. [*Solebury Twp. v. Dep't of Env't Prot.*, 928 A.2d 990, 1003 (Pa. 2007)]. This broad discretion includes the authority to adopt standards by which the EHB will evaluate applications for costs and fees. *Id.* at 1004. Such standards, however, must be consistent with "Pennsylvania's strong public policy to justly compensate parties [that] challenge agency actions by liberally interpreting fee-shifting provisions." *Id.*

*Sierra Club v. Dep't of Env't Prot.*, 211 A.3d 919, 926 (Pa. Cmwlth. 2019); *see also Lucchino v. Dep't of Env't Prot.*, 809 A.2d 264, 269 (Pa. 2002) (quoting *Tunison v. Com.*, 31 A.2d 521, 523 (Pa. 1943)) ("For reasons of public policy, Pennsylvania courts have construed . . . statutory sections [like Section 307(b)] liberally 'to justly compensate parties who have been obliged to incur necessary expenses in prosecuting lawful claims or in defending against unjust or unlawful ones.'").

Requiring a showing of bad faith in this kind of situation does not square with the public policy purpose underpinning Section 307(b)'s fee-shifting language. To state the obvious, a permittee necessarily plays a critical role in the permitting process, for without an initial permit application, there would be no reason for subsequent litigation initiated by a third party. It does not therefore seem reasonable that, in theory, the DEP could be saddled with fees and costs in response to inadvertent mistakes or good faith, negotiated compromises or settlements, while a permittee could get off scot-free under similar circumstances unless it has conducted itself in a dilatory, obdurate, or vexatious way.

EC - 2

Furthermore, *Lucchino* is distinguishable from the instant matter. While the Supreme Court took no issue with the EHB's use of a bad faith standard in that matter, the context was different. There, the EHB was faced with a private individual, whose challenge to the DEP's issuance of various permits was nothing more than a malicious attack upon the DEP and the affected permittee. *Lucchino*, 809 A.2d at 269. "[T]he EHB recognized that a citizen has a right to challenge agency actions that conflict with the law and directly affect the citizen" and therefore elected to require a higher burden of proof to justify an award of costs and fees in such a situation. *Id.* at 269-70. Implicitly, the EHB recognized that to do otherwise, by setting a lower bar for such awards, would likely dissuade people from exercising their right to challenge permit approvals, due to the prospective financial repercussions. The Supreme Court agreed with the EHB, stating:

> [A]ny grant of attorney's fees against an individual litigant in a suit against his government, has a potential "chilling effect" on the willingness of the ordinary citizen to pursue resolution of his disputes in the courts. However, recognizing that we must strike a delicate balance, it is equally important that this [concern] not be employed to defeat the protections against frivolous suits afforded to a defendant.

*Id.* at 270. Here, however, there is no concern about impinging upon such rights, as it is a permittee, *i.e.*, Sunoco, rather than an objector, which is the subject of the at-issue fee application. As such, a standard lower than "bad faith" in this situation would have no effect on Sunoco's ability or desire to challenge permitting actions taken by the DEP. This lower standard could theoretically impact a permittee's initial decision to exercise its property rights, due to a permittee's need to factor in the possibility, however remote, of such costs and fees. Such a concern is nevertheless too attenuated to justify using a bad faith requirement, as there is no

guarantee that a permit application will be approved upon review by the DEP (a review process that should minimize the risk of litigation, if done properly), or that a given permitting decision will be subsequently challenged by a third party.

The EHB's use of a bad faith standard to evaluate Clean Air Council, The Delaware Riverkeeper Network, and Mountain Watershed Association, Inc.'s joint fee application was thus an abuse of discretion. It follows, then, that the EHB's February 19, 2019 decision should be vacated in part, as well as that this matter should be remanded to the EHB for further proceedings, so that it can use a proper standard to evaluate this fee application. Therefore, I respectfully dissent from the majority, to the extent it concluded otherwise.

_____

ELLEN CEISLER, Judge